[No. H036573. Sixth Dist. Nov. 30, 2012.]

THE PEOPLE, Plaintiff and Appellant, v.
MITCHELL LEWIS ZEIGLER, Defendant and Respondent.

644

COUNSEL

Jeffrey F. Rosen, District Attorney, David Angel, Special Assistant District Attorney, and Judith B. Sklar, Deputy District Attorney, for Plaintiff and Appellant.

Jasmine Chandulal Patel, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**WALSH, J.**[*]—Mitchell Lewis Zeigler, defendant and respondent, petitioned for a certificate of rehabilitation regarding two prior drug convictions in 1989 and 2000. The People opposed the petition on the basis that it was barred by defendant's new, nonviolent drug offense in 2007 for which he was granted probation under Proposition 36 (the Substance Abuse and Crime Prevention Act of 2000).

Defendant argued that, because his 2007 conviction was set aside and the charges were dismissed after he successfully completed a Proposition 36 drug treatment program, the offense could not be considered in evaluating his petition for a certificate of rehabilitation. As defendant pointed out, the law provided that records "pertaining to an arrest or conviction resulting in successful completion of a drug treatment program under [Proposition 36] may not, . . . , be used in any way that could result in the denial of any . . . certificate." (Pen. Code, § 1210.1, former subd. (d)(3).)[1]

The People countered that, though it may not be allowed to put on evidence of defendant's arrest and conviction, it should have been allowed to put on evidence regarding the underlying conduct that led to the Proposition 36 case. The trial court disagreed and granted the petition for a certificate of rehabilitation, finding that the statute prevented the court from considering evidence of the underlying conduct because it provides that, after successful completion, "the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." The People appeal.

Construing the statutory schemes governing Proposition 36 dismissals (§§ 1201, 1210.1, 3063.1) and petitions for certificates of rehabilitation

---

[*] Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Penal Code, unless otherwise stated.

(§ 4852.01 et seq.), we conclude that, when ruling on defendant's petition for a certificate of rehabilitation, the trial court had the discretion to receive evidence regarding the conduct that resulted in defendant's arrest and conviction for a nonviolent drug possession offense. In our view, the court was mistaken regarding the extent of its discretion in this regard and therefore abused its discretion when it granted the certificate of rehabilitation. Consequently, we will reverse the order granting the certificate of rehabilitation and remand the matter to the trial court for further proceedings on defendant's petition.

## Factual and Procedural History

### I. *Prior Offenses*

In December 1989, defendant was convicted of two felony counts of transportation or sale of narcotics (Health & Saf. Code, § 11352) in Santa Clara County Superior Court case No. 130890. Initially, execution of defendant's sentence was suspended and he was granted probation. After violating his probation in September 1992, defendant was committed to state prison. He was last released from prison in June 1999, "[a]fter numerous releases then violations."

In February 2000, defendant was convicted of one count of possession of a controlled substance (Health & Saf. Code, § 11350) in Santa Clara County Superior Court case No. C9948400. Execution of his sentence was suspended and defendant was granted probation on the condition that he serve time in jail. (The precise amount of time defendant served in jail is not clear from the record.) He was released from custody on April 19, 2000, and his petition stated that his "probation terminated upon his release."

### II. *Petition for Certificate of Rehabilitation*

On June 1, 2007, defendant petitioned the court for a certificate of rehabilitation regarding his convictions in 1989 and 2000. The court conducted three hearings on the petition in 2007. After the initial hearing on July 30, 2007, the hearing was continued to September 17, 2007, and then to October 22, 2007. The record does not indicate the reasons for the continuances or whether the court requested that the district attorney or law enforcement conduct any investigation relative to the petition in 2007. At the October 22, 2007 hearing, defense counsel withdrew the petition because defendant had been arrested and charged with a new, nonviolent drug possession offense.

III. *2007 Nonviolent Drug Possession Offense*

The record does not contain any information regarding the nature of or the factual circumstances relating to defendant's 2007 nonviolent drug possession offense.

In October 2007, defendant was found eligible for Proposition 36 probation for his nonviolent drug possession offense. Defendant successfully completed his Proposition 36 treatment program on June 23, 2009. As a result, his Proposition 36 "probation was terminated, his plea was withdrawn, the judgment was set aside, and [his] motion to dismiss that case was granted."

IV. *Defendant's Motion to Renew Petition for Certificate of Rehabilitation*

On November 23, 2010, defendant filed a motion to renew his petition for a certificate of rehabilitation regarding his 1989 and 2000 convictions. In his motion, defendant asserted that, based on the nature of those offenses, he was subject to a seven-year period of rehabilitation before a petition for certificate of rehabilitation could be granted. He argued that his seven-year period of rehabilitation began to run when he was released from custody in April 2000 and that he was therefore eligible to petition the court in April 2007. After stating that a new offense ordinarily requires the court to restart the period of rehabilitation, defendant argued that the 2007 nonviolent drug possession offense could not be considered in calculating his period of rehabilitation because he had been "released from all penalties and disabilities" related to that conviction after he successfully completed his Proposition 36 probation and his conviction for the 2007 drug offense was set aside.

Defendant observed that there were no published cases "dealing with the intersection" of Proposition 36 and the statutory scheme governing certificates of rehabilitation. He argued that Proposition 36 strictly limits the subsequent use and consideration of his arrest and conviction for his 2007 nonviolent drug possession offense. In particular, defendant relied on section 1210.1, former subdivision (d)(3),[2] which provided that, subject to certain exceptions, "after an indictment, complaint, or information is dismissed

---

[2] In 2006, the Legislature adopted Senate Bill No. 1137 (2005–2006 Reg. Sess.), which amended section 1210.1. The proposed amendments included adding a new subdivision (c) to the statute, relettering former subdivisions (c), (d), and (e), and amendments to the language of former subdivision (d) that are not relevant to our analysis. As a result, the provisions in former subdivision (d) were moved to a new subdivision (e). (See Stats. 2006, ch. 63, § 7, p. 1215; see also 50D West's Ann. Pen. Code (2012 supp.) § 1210.1 and publisher-added material foll. § 1210.1, pp. 190–200.) However, the amendment of section 1210.1 by Senate Bill No. 1137 was held unconstitutional and invalid in *Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366 [101 Cal.Rptr.3d 229]. Although the amendments from Senate Bill No. 1137 are invalid, they remain "on the books." In their papers below and in their briefs on appeal, the

pursuant to [Proposition 36], the defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or convicted for the offense" and that records "pertaining to an arrest or conviction resulting in successful completion of a drug treatment program under [Proposition 36] may not, . . . , be used in any way that could result in the denial of any employment, benefit, license, or certificate."

Defendant acknowledged that the statutory scheme governing Proposition 36 contains exceptions that authorize the disclosure of an arrest and conviction for a nonviolent drug possession offense, but argued that none of the exceptions allowed such evidence to be used in conjunction with a petition for a certificate of rehabilitation. Defendant asserted that, because the statute did not expressly mention certificates of rehabilitation, his 2007 nonviolent drug possession offense could not be used to deny him a certificate of rehabilitation. Defendant asked the trial court to hear his petition for a certificate of rehabilitation and to treat his Proposition 36 offense as if it had never occurred.

## V. *People's Opposition to Motion*

The district attorney opposed defendant's motion both on procedural grounds and on the merits.

Procedurally, the district attorney stated that defendant had filed his motion only the week before and that the "investigation into his claim, therefore [had] not been completed."[3] However, the district attorney agreed that the motion could be heard to resolve the legal issue presented and that the court could thereafter determine whether further investigation and hearing was required on the petition.

Regarding the merits, the district attorney argued that defendant admitted that he was last released on probation in October 2007, so the earliest he

---

parties identified the statutory provision at issue in this appeal as "section 1210.1, subdivision (e)," using the letter designation assigned by the amendment in Senate Bill No. 1137. Since the amendment is invalid, we shall refer to the subdivision at issue by its original, preamendment designation as "subdivision (d)," taking care to analyze the preamendment language of the statute.

[3] Section 4852.07 requires the petitioner to give 30 days' notice of the hearing on a petition for certificate of rehabilitation. The statute provides: "The petitioner shall give notice of the filing of the petition to the district attorney of the county in which the petition is filed, to the district attorney of each county in which the petitioner was convicted of a felony or of a crime the accusatory pleading of which was dismissed pursuant to Section 1203.4, and to the office of the Governor, together with notice of the time of the hearing of the petition, at least 30 days prior to the date set for such hearing." (§ 4852.07.) Defendant gave 30 days' notice when he filed his original petition. It is not clear whether the motion to renew the petition also required 30 days' notice. That issue is not before us.

could petition for a certificate of rehabilitation was October 2014. The district attorney argued that the "plain text" of the statutes governing certificates of rehabilitation required defendant to obey all laws and that, because defendant admitted he committed a felony in 2007, he was not eligible for a certificate of rehabilitation until 2014. The district attorney asserted that while defendant may be entitled to a record clearance under Proposition 36, that does not change the fact that he broke the law by possessing drugs in 2007. The district attorney argued that there were alternative ways of proving defendant's underlying conduct and his failure to obey the law. He contended that there were no conflicts between the Proposition 36 and certificate of rehabilitation statutory schemes. Finally, the district attorney asserted that a certificate of rehabilitation is not easily earned, and that it was too early to issue the certificate because (1) defendant had a 20-year struggle with addiction and law violations, and (2) he had completed his drug treatment only the year before.

At the hearings on the petition, the district attorney told the court that defendant had not "completed the process whereby you submit to an interview, provide your information," that the court was "entitled to and, in fact, mandated to take evidence, for example [from] the peace officer who knows of any law violation" and that it was "not uncommon to call live witnesses." He argued that there is "a crucial distinction between a conviction and the actual underlying behavior" and that the court "would want some sort of evidentiary hearing" regarding "any allegation thought to bar someone" from receiving a certificate of rehabilitation, and that "a peace officer is obligated to give the information to the Court."

## VI. *Trial Court Ruling on Motion and Petition for Certificate of Rehabilitation*

After conducting two hearings, the court granted defendant's petition for a certificate of rehabilitation. The People appeal.

### DISCUSSION

The People contend that the trial court erred in interpreting the statutes governing certificates of rehabilitation and Proposition 36 dismissals when it concluded that defendant's Proposition 36 offense could not be considered in evaluating his petition for a certificate of rehabilitation. The People argue that under the statutory scheme governing certificates of rehabilitation, the court examines the petitioner's entire conduct during the period of rehabilitation, and is not limited to considering merely his record of arrests and convictions. The People argue, for example, that under section 4852.11, upon the court's request, a peace officer is required to report "all violations of law" and is not

limited to reporting only those that result in arrests or convictions. The People assert that defendant's 2007 nonviolent drug possession offense and his subsequent Proposition 36 probation and drug treatment demonstrate both that he did not meet the seven-year rehabilitation requirement and that his rehabilitation was not yet complete, since he had failed to obey the law or remain drug free for seven years. The People also argue that the court abused its discretion when it granted the petition for a certificate of rehabilitation. We begin by addressing the statutory interpretation issues.

## I. Statutory Interpretation Issues

### A. Standard of Review and Rules of Statutory Construction

The construction of a statute is purely a question of law and is subject to de novo review on appeal. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1520 [45 Cal.Rptr.3d 585] (*Failla*).)

■ "In interpreting a voter initiative such as Proposition 36, we apply the same principles that govern the construction of a statute. [Citations.] ' "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law." ' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168] (*Canty*).) In the case of a voter initiative, our role is to ascertain the intent of the electorate.

"Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the plain meaning of the measure. [Citations.] '[T]he "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " (*Canty, supra,* 32 Cal.4th at p. 1276.) "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.]' " (*Canty, supra,* at p. 1276–1277.) If the Legislature, or the electorate in the case of an initiative measure, " 'has provided an express definition of a term, that definition ordinarily is binding on the courts.' " (*Id.* at p. 1277.)

### B. Petitions for Certificates of Rehabilitation

We begin our analysis by reviewing the statutory scheme governing petitions for certificates of rehabilitation (§ 4852.01 et seq.), which is entitled

"Procedure for Restoration of Rights and Application for Pardon," and which our state Supreme Court described in detail in *People v. Ansell* (2001) 25 Cal.4th 868 [108 Cal.Rptr.2d 145, 24 P.3d 1174] (*Ansell*).[4]

The *Ansell* court began by reviewing the purpose and historical reasons for petitions for certificates of rehabilitation. The court explained that the Penal Code prescribes punishment for the crimes defined therein, which in the case of felonies, "typically involves a prison sentence, although other dispositions such as probation are authorized in some cases." (*Ansell, supra*, 25 Cal.4th at p. 872.) "Less known, perhaps, are the collateral consequences associated with a felony conviction after sentence has been served. Most of these disabilities have existed in some form for decades, and many appear in statutes located outside the Penal Code. Some of the more common rules include disqualification from jury service, impeachment as a witness, inaccessibility to firearms, and registration as a sex offender. In addition, a felony conviction may disqualify the person from practicing many licensed trades and professions and from holding certain positions of public employment. Under prior law, persons convicted of 'infamous crimes' were disenfranchised even after sentence was complete. However, a convicted felon who is not imprisoned or on parole can now vote." (*Ansell*, at pp. 872–873, fns. omitted.)

■ "[C]onvicted felons who claim to be reformed have traditionally sought relief from the various consequences of their convictions through the Governor's power and discretion to grant pardons under the state Constitution."[5] (*Ansell, supra*, 25 Cal.4th at p. 873.) Two different pardon application procedures exist. (*Id.* at p. 874.)

---

[4] In describing the scope and purpose of the statutory scheme, the People rely heavily on *Ansell*, quoting extensively from the opinion and using its language verbatim. However, they do not cite *Ansell* as the source of that exposition, thereby suggesting the words and analysis in the opening brief are those of the persons who authored the brief, rather than those of our state Supreme Court. (*Ansell, supra*, 25 Cal.4th at pp. 874–877.) The People take the same approach later in their brief, using unattributed, verbatim quotes from *People v. Blocker* (2010) 190 Cal.App.4th 438 [118 Cal.Rptr.3d 215] (*Blocker*), and even borrowing the entirety of *Blocker*'s string cites. (*Blocker, supra*, at pp. 442–443.) We find this practice unusual: citation of the lead Supreme Court opinion in support of a point generally aids a party's argument and bolsters credibility. The People's failure to do so here has had the opposite effect.

[5] The Governor's clemency powers are described in article V, section 8, subdivision (a) of the California Constitution, which provides: "Subject to application procedures provided by statute, the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment. The Governor shall report to the Legislature each reprieve, pardon, and commutation granted, stating the pertinent facts and the reasons for granting it. The Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring."

The first and oldest procedure—the one that defendant did not invoke—is located in section 4800 et seq. (*Ansell, supra,* 25 Cal.4th at p. 874.) "As pertinent here, this scheme authorizes the submission of pardon applications directly to the Governor." (*Ibid.*) The procedures for investigating and processing direct pardon applications to the Governor are described in *Ansell.* (*Id.* at p. 874, fn. 11.)

The second procedure—the one defendant relied on—is the certificate of rehabilitation procedure set forth in section 4852.01 et seq., "which, by its own terms, offers an 'additional, but not an exclusive' means of requesting a pardon. (§ 4852.19.) During World War II the Governor's office was inundated with pardon applications received from ex-felons who were otherwise barred from serving in the military and working in defense industries. [Citations.] Enacted as an urgency measure in 1943, the certificate of rehabilitation scheme eased the administrative burden on the executive branch by allowing the superior court to investigate and recommend pardon applicants." (*Ansell, supra,* 25 Cal.4th at pp. 874–875.) Except for a few changes, which are not relevant here, the statutory scheme has not changed materially since it was reviewed by the *Ansell* court in 2001. (See Cal. Law Revision Com. com., 51C pt. 2 West's Ann. Pen. Code (2011 ed.) foll. §§ 4852.03, 4852.17, 4852.18, pp. 43–44, 60 & 62–63; see also Stats. 2010, ch. 178, § 84, operative Jan. 1, 2012; Stats. 2002, ch. 784, § 572, p. 4933.)

██ "With certain exceptions . . . , the certificate of rehabilitation procedure is available to convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained 'period of rehabilitation' in California. (§ 4852.03, subd. (a) [imposing general minimum requirement of five years' residence in this state, plus an additional period typically ranging between two and five years[, *for a total of seven to 10 years,*] depending upon the conviction]; see §§ 4852.01, subds. (a)–(c), 4852.06.)" (*Ansell, supra,* 25 Cal.4th at p. 875.) It is undisputed that the applicable period of rehabilitation in this case is seven years.

During the period of rehabilitation, the "person shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land." (§ 4852.05; hereafter sometimes referred to as the "behavioral requirements.") "Several provisions make clear that a person is 'ineligible to . . . petition for a certificate of rehabilitation' (§ 4852.03, subd. (b)), and that no such petition 'shall be filed' (§ 4852.06), unless and until the foregoing requirements are met. (See § 4852.01, subds. (a)–(c) . . . .)" (*Ansell, supra,* 25 Cal.4th at p. 875.)

██ "Proceedings begin when a qualified person petitions for a certificate of rehabilitation in the superior court of the county in which he lives.

(§ 4852.06; see § 4852.07 [requiring notice to the Governor and to the district attorney in the county or counties where the petition is filed and the petitioner was convicted].) Other provisions allow the petitioner to pursue a certificate of rehabilitation without personal expense and with professional assistance. (§§ 4852.04 [establishing a right to counsel and to assistance from rehabilitative agencies, including probation and parole officers], 4852.08 [authorizing representation by the public defender or other appointed counsel], 4852.09 [prohibiting court fees of any kind], 4852.1 [authorizing the production of official records at no charge], 4852.18 [making the petition and other necessary forms available at no charge].)" (*Ansell, supra,* 25 Cal.4th at p. 875.)

"The superior court holds a hearing and considers testimonial and documentary evidence bearing on the petition. (§§ 4852.1, 4852.11.) To this end, the court may compel the production of judicial, correctional, and law enforcement records concerning the crimes of which [the] petitioner was convicted, his performance in custody and on supervised release, and his conduct during the period of rehabilitation, including all violations of the law known to any peace officer. [Citation.] The district attorney may be directed to investigate and report on relevant matters. (§ 4852.12.)" (*Ansell, supra,* 25 Cal.4th at p. 875.) "[A] court may, but is not mandated to, require 'testimony as it deems necessary' and an investigative report from the district attorney of the petitioner and his residence, in addition to any documentary evidence a petitioner presents." (*People v. Lockwood* (1998) 66 Cal.App.4th 222, 228 [77 Cal.Rptr.2d 769] (*Lockwood*), citing §§ 4852.1 and 4852.12.)

Section 4852.13 gives the court discretion to decide whether a petitioner has demonstrated to the court's satisfaction, "by his or her course of conduct his or her rehabilitation and . . . fitness to exercise all of the civil and political rights of citizenship." (§ 4852.13, subd. (a).) "To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction." (*Ansell, supra,* 25 Cal.4th at pp. 875–876, citing § 4852.13, subd. (a).) The overall goal of the statutory scheme is "to restore civil and political rights of citizenship to ex-felons who have proved their rehabilitation." (*Lockwood, supra,* 66 Cal.App.4th at p. 230, citing § 4852.17.)

A certificate of rehabilitation is not "*necessarily*" available to any convicted felon who claims to meet the minimum statutory requirements and is otherwise eligible to apply." (*Ansell, supra,* 25 Cal.4th at p. 887.) "[T]he superior court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding. (§§ 4852.1–4852.12.) The standards

for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13(a); see §§ 4852.11, 4852.13(b).) The decision whether to grant relief based on the evidence is discretionary in nature. . . . [T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court." (*Ansell*, at pp. 887–888, citing *Lockwood, supra*, 66 Cal.App.4th 222, 227–229 and § 4852.13(a) [a certificate of rehabilitation "may" issue upon the requisite showing of reform].) If the court receives satisfactory proof that the petitioner has violated any laws during the rehabilitation period, the court may deny the petition and determine a new period of rehabilitation, "not to exceed the original period of rehabilitation for the same crime." (§ 4852.11.)

■ Upon granting the petition, the "issuing court transmits certified copies of the certificate of rehabilitation to the Governor, the Board of Prison Terms, the Department of Justice, and—in the case of persons twice convicted of a felony—the Supreme Court. (§ 4852.14.)" (*Ansell, supra*, 25 Cal.4th at p. 876.) "A certificate of rehabilitation issued and transmitted in the foregoing manner serves two functions under the language of the statutory scheme. First, it has the effect of 'recommending that the Governor grant a full pardon to the petitioner.' (§ 4852.13(a).) Second, the certificate of rehabilitation constitutes 'an application for a full pardon upon receipt of which the Governor may, without any further investigation, issue a pardon to the person named therein, except that, pursuant to [our state Constitution], the Governor shall not grant a pardon to any person twice convicted of felony, except upon the written recommendation of a majority of the judges of the Supreme Court.' (§ 4852.16.)" (*Ansell*, at p. 876, citing Cal. Const., art. V, § 8.) The latter provision applies in this case since defendant was convicted of felonies in 1989 and 2000.

■ Certain civil rights and privileges are restored if the Governor acts favorably on the request. (*Ansell, supra*, 25 Cal.4th at p. 876.) General statements of this "ameliorative principle" appear in sections 4852.17 and 4853 and "[m]ore specific statutes in various codes and schemes confirm that a pardon removes or alleviates particular disabilities . . . ." (*Ansell*, at pp. 876–877 & fn. 16, citing Code Civ. Proc., § 203, subd. (a)(5) [jury service], Evid. Code, § 788 [impeachment with a felony], and other examples.) Relief may be available from some disabilities based on the grant of a certificate of rehabilitation, even though no pardon has been obtained. (*Ansell*, at p. 877 & fn. 17, citing Pen. Code, § 290.5 and Bus. & Prof. Code, § 480, subd. (b).)

As we noted previously, defendant petitioned for a certificate of rehabilitation in June 2007 and withdrew his petition in October 2007 after committing a new, nonviolent drug possession offense. In November 2010, after his

conviction for the 2007 drug offense was set aside because he had successfully completed his drug treatment program and his Proposition 36 probation, defendant renewed his petition for a certificate of rehabilitation, and argued that, after his 2007 drug conviction was set aside, evidence relating to that offense and conviction could not be considered by the court in evaluating his petition for a certificate of rehabilitation. The court agreed and granted the petition.

The People argue that, by holding that the seven-year rehabilitation period does not apply to defendant because of his successful completion of his Proposition 36 treatment, the trial court "engraft[ed] an exception to the rehabilitation statute" that has no support in its literal terms. The trial court did not, however, hold that the seven-year rehabilitation period did not apply. Instead, it rejected the district attorney's argument that even though the statutory scheme prohibited the prosecution from proving the arrest and conviction associated with the 2007 drug offense, the prosecution could put on evidence of the underlying unlawful conduct. The court stated that "the language [']shall be deemed to have never occurred['] " in Proposition 36 was "an attempt to deal with the situation posed by" the prosecution. Thus, the court held that defendant's 2007 nonviolent drug possession offense could not be considered in calculating defendant's period of rehabilitation or in evaluating his conduct during the period of rehabilitation, and granted the petition.

To review the propriety of the court's holding, we review the statutory scheme governing Proposition 36 probation.

### C. *Proposition 36*

■ "Proposition 36, an initiative measure, was approved by the voters in November 2000 and became effective on July 1, 2001." (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 90 [10 Cal.Rptr.3d 99], citing § 1210.1.) "Proposition 36 mandates probation and diversion to a drug treatment program for those offenders whose illegal conduct is confined to using, possessing, or transporting a controlled substance. Its provisions outline 'an alternative sentencing scheme' for persons convicted of certain drug offenses. [Citation.] 'In effect, it acts as an exception to the punishment' provided for certain offenses involving controlled substances." (*Canty, supra*, 32 Cal.4th 1266, 1275, quoting *In re Varnell* (2003) 30 Cal.4th 1132, 1136 [135 Cal.Rptr.2d 619, 70 P.3d 1037].) Under Proposition 36, "a defendant who has been convicted of a 'nonviolent drug possession offense' must receive probation and diversion into a drug treatment program, and may not be sentenced to incarceration as an additional term of probation." (*Canty, supra*, at pp. 1272–1273.)

The Supreme Court has recognized four purposes for Proposition 36, namely that in enacting the initiative, "the electorate expressed the purpose and intent [(1)] to divert nonviolent defendants charged with 'simple drug possession and drug use offenses' from incarceration into community-based substance abuse treatment programs, [(2)] to halt the expenditure of hundreds of millions of dollars to incarcerate and re-incarcerate 'nonviolent drug users' better served by community-based treatment, [(3)] to enhance public safety by reducing drug-related crime and reserving jails and prisons for serious and violent offenders, and [(4)] to improve public health by treatment of drug abuse and dependence through proven and effective drug treatment strategies." (*Canty, supra*, 32 Cal.4th at pp. 1280–1281.)

"Proposition 36 is codified in Penal Code sections 1210, 1210.1, and 3063.1 and Health and Safety Code section 11999.4 et seq." (*Canty, supra*, 32 Cal.4th at p. 1273, fn. 1.) "Section 1210.1, subdivision (a) provides in relevant part that subject to the exceptions set forth, 'any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program.' " (*Canty, supra*, 32 Cal.4th at p. 1275.)

The arguments in this case focus on section 1210.1, former subdivision (d), which provided in part in former subdivision (d)(1): "At any time after completion of drug treatment, a defendant may petition the sentencing court for dismissal of the charges. If the court finds that the defendant successfully completed drug treatment, and substantially complied with the conditions of probation, the conviction on which the probation was based shall be set aside and the court shall dismiss the indictment, complaint, or information against the defendant." Thus, under section 1210.1, former subdivision (d)(1), once the court found that defendant had successfully completed Proposition 36 probation for his 2007 nonviolent drug possession offense, it was required to set aside his conviction and dismiss the charging document, which is what occurred in this case.

In addition, subject to certain exceptions, section 1210.1, former subdivision (d)(1) provided that "both the arrest and the conviction shall be deemed never to have occurred" and "the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted."

Exceptions to the rules stated in former subdivision (d)(1) of section 1210.1 are set forth in former subdivision (d)(2) and (3) of the statute. The exception in former subdivision (d)(2) relates to the possession of firearms and is not at issue in this case.[6]

Former subdivision (d)(3) of section 1210.1 described two additional benefits of a Proposition 36 dismissal and then set forth exceptions or limitations on those benefits. First, section 1210.1, former subdivision (d)(3) provided that after "an indictment, complaint, or information" (hereafter an accusatory pleading) "is dismissed pursuant to [Proposition 36], the defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or convicted for the offense." Second, it provided that subject to certain exceptions, "a record pertaining to an arrest or conviction resulting in successful completion of a drug treatment program under this section may not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate."

Section 1210.1, former subdivision (d)(3) set forth these exceptions: "Regardless of his or her successful completion of drug treatment, the arrest and conviction on which the probation was based may be recorded by the Department of Justice and disclosed in response to any peace officer application request or any law enforcement inquiry. Dismissal of an information, complaint, or indictment under this section does not relieve a defendant of the obligation to disclose the arrest and conviction in response to any direct question contained in any questionnaire or application for public office, for a position as a peace officer as defined in Section 830, for licensure by any state or local agency, for contracting with the California State Lottery, or for purposes of serving on a jury."

■ As these exceptions illustrate, a Proposition 36 dismissal is not a dismissal for all purposes. Under section 1210.1, former subdivision (d), "a conviction for a nonviolent drug possession offense is 'deemed not to have occurred' for some purposes *but not others*, and a defendant is released from some *but not all* disabilities resulting from that conviction." (*People v. DeLong* (2002) 101 Cal.App.4th 482, 490, 492 [124 Cal.Rptr.2d 293] [a Prop. 36 dismissal does not render the defendant's appeal of the underlying conviction moot since the defendant "continues to suffer a besmirched name and the stigma of criminality"].)

---

[6] Section 1210.1, former subdivision (d)(2) provided that a dismissal pursuant to former subdivision (d)(1) "does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 12021." Section 12021 prohibits felons from owning a firearm.

D. *Analysis*

The People argue that the plain language of section 1210.1, former subdivision (d) indicated that its provisions apply only to arrests and convictions and that defendant's successful completion of Proposition 36 probation does not preclude use of evidence of (1) the date of his "underlying law violation" or (2) the date of his release from probation in calculating the seven-year period of rehabilitation required to issue a certificate of rehabilitation. They acknowledge that under section 1210.1, former subdivision (d)(1), upon the dismissal of the accusatory pleading in defendant's Proposition 36 case, his "arrest and conviction shall be deemed never to have occurred," but argue that the arrest and conviction are not synonymous with the "actual law violation" that led to the arrest and conviction. Under the People's view, evidence of defendant's conduct—the fact that defendant used drugs in 2007—was admissible in the hearing on the petition for a certificate of rehabilitation.

1. *"Certificate" in Section 1210.1 Includes a "Certificate of Rehabilitation"*

As noted, section 1210.1, former subdivision (d)(3) provided that, subject to certain exceptions, a record of an arrest or a conviction pertaining to a defendant who has successfully completed Proposition 36 probation "may not, without the defendant's consent, be used *in any way* that could result in the denial of any employment, benefit, license, or *certificate*." (Italics added.)

Neither section 1210, which defines certain terms used in the Proposition 36 statutory scheme, nor section 1210.1 define the term "certificate" as it is used in section 1210.1, former subdivision (d). The People do not advance any argument regarding whether "certificate" includes a certificate of rehabilitation under section 4852.01 et seq. The Proposition 36 statutory scheme is clearly remedial in nature and, as *B. W. v. Board of Quality Assurance* instructs, "under well-settled rules of judicial construction, such a statute is to be liberally construed to promote the objects to be accomplished by it." (*B. W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 230 [215 Cal.Rptr. 130] (*B.W.*).) For these reasons, we conclude that the reference to a "certificate" in section 1210.1, former subdivision (d) includes a certificate of rehabilitation under section 4852.01 et seq.

Because the People rely primarily on *B.W., supra,* 169 Cal.App.3d 219, we review that case.

## 2. *B. W. v. Board of Medical Quality Assurance*

The defendant in *B. W.* was arrested for and charged with possession of cocaine in violation of Health and Safety Code section 11350. (*B.W., supra,* 169 Cal.App.3d at p. 225.) Because the defendant was a licensed physician, his arrest was reported to the Board of Medical Quality Assurance (Board). Shortly after his arrest, the defendant began a pretrial drug diversion program pursuant to section 1000. Six months later, he successfully completed the diversion program, at which time the criminal case against him was dismissed. Months after the defendant in *B. W.* completed his diversion program, the Board initiated disciplinary proceedings against him based solely on information obtained from his arrest record, and ultimately revoked the defendant's medical license.

In language very similar to that of the Proposition 36 provision at issue in this case (§ 1210.1, former subd. (d)(1), (3)), the diversion statute in *B. W.* (former § 1000.5, subd. (a)) provided: " 'Any record filed with the Department of Justice shall indicate the disposition in those cases diverted pursuant to this chapter. Upon successful completion of a diversion program the arrest upon which the diversion was based shall be deemed to have never occurred. The divertee may indicate in response to any question concerning his prior criminal record that he was not arrested or diverted for such offense. A record pertaining to an arrest resulting in successful completion of a diversion program shall not, without the divertee's consent, be used in any way which could result in the denial of any employment, benefit, license, or certificate.' "[7] (*B.W., supra,* 169 Cal.App.3d at pp. 228–229.)

One of the issues in *B. W.* was "whether the Board [was] prohibited by [former] section 1000.5 from relying solely on information in [the defendant's] record of arrest to institute disciplinary proceedings against him after his successful completion of diversion . . . ." (*B.W., supra,* 169 Cal.App.3d at p. 232.) The court observed that former section 1000.5 provided that "after successful completion of diversion, the record pertaining to the arrest shall

---

[7] After *B. W.* was decided, former section 1000.5 was amended and renumbered section 1000.4. (Stats. 1996, ch. 1132, § 6.5, p. 8092; see Historical and Statutory Notes, 50A West's Ann. Pen. Code (2008 ed.) foll. § 1000.4, p. 32.) The amendments essentially changed the terms "divertee" to "defendant" and "diversion" to "deferred entry of judgment." Currently, section 1000.4 provides: "Any record filed with the Department of Justice shall indicate the disposition in those cases deferred pursuant to this chapter. Upon successful completion of a deferred entry of judgment program, the arrest upon which the judgment was deferred shall be deemed to have never occurred. The defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or granted deferred entry of judgment for the offense, except as specified in subdivision (b). A record pertaining to an arrest resulting in successful completion of a deferred entry of judgment program shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate."

not be used in any way" and held that "the use of the words 'shall not be used' and 'in any way,' in referring to the record of arrest of a successful divertee, is indicative of an intent by the Legislature that the protection of [former] section 1000.5 be given the broadest application." (169 Cal.App.3d at p. 232.) The court reasoned that since the Board initiated disciplinary proceedings against the defendant almost seven months after he successfully completed the diversion program and the disciplinary proceedings were "based solely on the information obtained from [the defendant's] record of arrest," the defendant "should be protected by the provisions of section 1000.5." (*Id.* at pp. 232–233, italics omitted.) The court therefore held that the Board was prohibited by former section 1000.5 from using the defendant's arrest record as the sole source of information to initiate disciplinary proceedings against him, unless he consented to such use. (169 Cal.App.3d at pp. 232–233.) The court explained that its holding was "in keeping with the legislative intent to give the protection of this section the broadest application" and that its construction was "consistent with the objective of the diversion statute here to restore a successful divertee to productive citizenship without the stigma of disciplinary action taken against his license." (*Id.* at p. 233.)

In dicta, the court observed that nothing in former section 1000.5 barred "an agency or other entity from properly using information in a divertee's arrest record either before or during the period of diversion" and that the protections of the statute went into effect "only upon the successful completion of diversion." (*B.W., supra,* 169 Cal.App.3d at p. 229, italics omitted.) The court stated that "nothing in [former] section 1000.5 prevented the Board from using information in [the defendant's] arrest record to initiate disciplinary proceedings against him prior to his successful completion of diversion. Nor was the Board prohibited from investigating the matter to develop additional information. Had the Board initiated such proceedings prior to [the defendant's] successful completion of diversion, based either on the information in his arrest record or on information developed from its investigation, or both, it is also clear that the Board could have compelled [the defendant] to testify about the facts of his arrest." (*Id.* at p. 232; see *Sandoval v. State Personnel Bd.* (1990) 225 Cal.App.3d 1498, 1502 [275 Cal.Rptr. 702] (*Sandoval*).)

■ The People rely on this dicta from *B.W.* to support their contention that although evidence of defendant's arrest and conviction was rendered inadmissible in the proceedings for a certificate of rehabilitation by section 1210.1, former subdivision (d), the statute did not preclude the court from considering evidence of the underlying conduct, namely that defendant possessed drugs during the period of rehabilitation. We do not find the dicta in *B.W.* persuasive here. " ' "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an

opinion is not authority for a proposition not therein considered." ' " (*Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1278 [135 Cal.Rptr.2d 654, 70 P.3d 1067].) The court in *B.W.* was interpreting a statute that is different from those at issue here, and addressed the question whether the record of the arrest was admissible. The question here is whether evidence of the underlying conduct is admissible under the statutory scheme. Moreover, the People's argument fails to take into consideration the important *temporal* aspect of the court's reasoning in dicta. As the *B.W.* court explained, the protections of former section 1000.5 did not apply until *after* the defendant successfully completed his diversion program. Thus, the court suggested that, before that time, information obtained from either the arrest record or the Board's independent investigation might be used.

For example, in *Sandoval*, the court held that two correctional officers who were dismissed from their employment for violating Government Code section 19572, subdivision (t) (failure of good behavior while off duty that discredits the agency) after being arrested for possession of drugs and drug paraphernalia in their homes were not entitled to the protections of former section 1000.5 in the administrative proceedings in which they challenged their dismissals because those proceedings occurred before they even entered a diversion program. (*Sandoval, supra,* 225 Cal.App.3d at pp. 1500–1502.) Unlike the defendants in *Sandoval*, defendant successfully completed his Proposition 36 rehabilitation and his conviction for his 2007 nonviolent drug possession offense was set aside before he renewed his petition for a certificate of rehabilitation.

Although we conclude that the People's reliance on the dicta in *B.W.* is misplaced, as we shall explain, our construction of section 1210.1, former subdivision (d) and the statutes governing petitions for certificate of rehabilitation lead to the conclusion that evidence of the conduct that led to defendant's arrest and conviction for a nonviolent drug possession offense in 2007 was admissible in the proceedings on the certificate of rehabilitation.

### 3. *Plain Language of Section 1210.1, Subdivision (d)*

 Returning to section 1210.1, former subdivision (d), we conclude that the plain language of the statute supports the conclusion that its provisions are limited to evidence related to a defendant's arrests and convictions and does not bar the consideration of evidence of the underlying conduct.

Section 1210.1, former subdivision (d)(1) provided that upon successful completion of Proposition 36 treatment and probation (1) the defendant's *"conviction . . .* shall be set aside," (2) the accusatory pleading shall be

dismissed, (3) "both *the arrest and the conviction* shall be deemed never to have occurred," and (4) "the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." (Italics added.) The statute focuses on the arrest and conviction and does not mention the underlying conduct. In our view, although the phrase "resulting from the offense of which he or she has been convicted" contains the word "offense," the phrase is synonymous with the word "conviction."

Former subdivision (d)(3) of the statute provides that after the accusatory pleading has been dismissed, "the defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not *arrested or convicted* for the offense" and that "*a record pertaining to an arrest or conviction* resulting in successful completion of a drug treatment program . . . may not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate." (Italics added.) Again, the focus is on the disclosure of the arrest or conviction: the defendant is not required to disclose the arrest or conviction and a record of the arrest or conviction cannot be used against him.

■■■ The exceptions in section 1210.1, former subdivision (d)(3) echo this same narrow focus. They provided that "the *arrest and conviction* . . . may be recorded by the Department of Justice" and that the department may disclose that record in response to (1) a police officer application request, or (2) "any law enforcement inquiry." (§ 1210.1, former subd. (d)(3), italics added.) And in spite of the general rule of nondisclosure, the defendant is required to disclose "*the arrest and conviction* in response to any direct question contained in any questionnaire or application" in five situations: when applying (1) "for public office," (2) "for a position as a peace officer," (3) "for licensure by any state or local agency," (4) "for contracting with the California State Lottery," or (5) "for purposes of serving on a jury." (§ 1210.1, former subd. (d)(3), italics added.) Thus, the exceptions focus on the disclosure of a record of or the fact of the "arrest and conviction." The language of the statute is very precise and nothing in section 1210.1, former subdivision (d) limits the use of evidence of the underlying unlawful conduct.

In further support of our conclusion, we return to the statutes governing petitions for certificates of rehabilitation.

### 4. *Procedures for Hearings on Certificates of Rehabilitation*

Unlike section 1210.1, former subdivision (d), which focuses on and limits the use of "a record pertaining to an arrest or conviction resulting in successful completion of a drug treatment program under" Proposition 36, the

statutes governing certificates of rehabilitation have a broader focus and instruct the court to consider the petitioner's conduct throughout the period of rehabilitation. Section 4852.05 provides that to obtain a certificate of rehabilitation, the petitioner "shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land."

Section 4852.1 provides in pertinent part: "The court in which the petition is filed *may* require such testimony as it deems necessary, and the production, for the use of the court . . . , of all records and reports relating to the petitioner and the crime of which he was convicted, including the record of the trial, the report of the probation officer, if any, the records of the prison, jail, detention facility or other penal institution from which the petitioner has been released showing his conduct during the time he was there, the records of the penal institution or agency doctor and psychiatrist, the records of the parole officer concerning him if he was released on parole, . . . , and *written reports or records of any other law enforcement agency concerning the conduct of the petitioner since his release on probation or parole or discharge from custody.* All persons having custody of any such records shall make them available for the use of the court in the proceeding." (Italics added.)

Section 4852.11 provides in part: "Any peace officer shall report to the court, upon receiving a request as provided in Section 4852.1, *all violations of law* committed by said petitioner which may come to his knowledge." (Italics added.)

And section 4852.12 provides: "(a) In any proceeding for the ascertainment and declaration of the fact of rehabilitation under this chapter, *the court . . . may* request from the district attorney an investigation of the residence of the petitioner, the criminal record of the petitioner as shown by the records of the Department of Justice, any representation made to the court by the applicant, *the conduct of the petitioner during his period of rehabilitation,* including all matters mentioned in Section 4852.11, and any other information the court *may* deem necessary in making its determination. *If so requested,* the district attorney shall provide the court with a full and complete report of such investigations. [¶] (b) In any proceeding . . . under this chapter of a person convicted of a crime the accusatory pleading of which has been dismissed pursuant to Section 1203.4,[8] the district attorney, upon request of the court, shall deliver to the court the criminal record of petitioner as shown by the records of the Department of Justice. The district attorney may investigate

---

[8] Section 1203.4 permits criminal defendants who have successfully completed probation to petition the court to set aside a guilty verdict or allow the defendant to withdraw a plea of guilty or no contest and dismiss the accusatory pleading. (§ 1203.4.)

any representation made to the court by petitioner and may file with the court a report of the investigation *including all matters known to the district attorney relating to the conduct* and place and duration of residence *of the petitioner during the period of rehabilitation and all known violations of law* committed by petitioner." (Italics added.)

As the italicized language indicates, the focus of the trial court's inquiry in a petition for certificate of rehabilitation is the defendant's conduct during the period of rehabilitation, including any violations of law committed during that time.

These provisions also give trial courts a great deal of discretion in determining the extent of the evidence presented at a hearing on a petition for a certificate of rehabilitation. The court may, but is not required to, order the production of the records listed in section 4852.1. The court may require any testimony it deems necessary, including that of police officers. (§ 4852.11.) The court may, but is not required to, order the district attorney to investigate the petitioner's residence, criminal record, and conduct during the period of rehabilitation and report to the court on such matters. (§ 4852.12; *Lockwood, supra,* 66 Cal.App.4th at p. 222.)

And once the trial court orders the production of records, or orders a peace officer to testify, or orders a report from the district attorney, persons subject to the court's orders have a mandatory duty to respond to the court. (§§ 4852.1 ["All persons having custody of any such records *shall* make them available . . . ." (italics added)], 4852.11 ["Any peace officer *shall* report to the court . . . ." (italics added)], 4852.12 ["If so requested, the district attorney *shall* provide the court with a full and complete report of such investigations." (italics added)].)

5. *Effect of a New Law Violation During Period of Rehabilitation*

Although section 4852.05 requires the petitioner to obey all laws to be eligible for a certificate of rehabilitation, the effect of a new law violation during the period of rehabilitation is addressed by section 4852.11.

Section 4852.11 provides in part: "Any peace officer shall report to the court, upon receiving a request as provided in Section 4852.1, all violations of law committed by said petitioner which may come to his knowledge. Upon receiving satisfactory proof of such violation the court *may* deny the petition and determine a new period of rehabilitation not to exceed the original period of rehabilitation for the same crime." (Italics added.)

The court construed section 4852.11 in *Failla, supra,* 140 Cal.App.4th 1514. The defendant in *Failla* was charged with committing a series of

burglaries and sexual assaults involving five different female victims. In 1989, he was convicted by plea of burglary and sexual penetration by a foreign object, and sentenced to eight years in prison. (*Id.* at pp. 1516–1517.) The defendant was released from prison in 1994 and placed on parole. In 2004, he petitioned the court for a certificate of rehabilitation. (*Id.* at p. 1517.) At the hearing on his petition, the court considered an investigative report prepared by an investigator in the district attorney's office and a police report, both of which reported an incident that occurred in 1999. The reports alleged that the defendant had purchased marijuana from an individual named Madsen and that he had taken property that belonged to Madsen. (*Ibid.*) At the hearing on the petition, the defendant testified that he never used illegal drugs and that he went to Madsen's house to pay for marijuana his son had purchased. The court denied the defendant's petition for a certificate of rehabilitation based on the law violation in 1999 and ruled that the defendant had to wait five years from the date of the denial before he could file another petition. (*Id.* at p. 1518.)

On appeal, the defendant in *Failla* argued that the court erred in calculating the waiting period to apply for another certificate of rehabilitation, and that the waiting period should be 10 years from the date of the 1999 offense, not five years from the hearing on his petition. (*Failla, supra*, 140 Cal.App.4th at p. 1518.) Interpreting section 4852.11, the court held that the date of the denial of the petition was the proper starting date for the new waiting period. (140 Cal.App.4th at p. 1522.) The court observed that section 4852.11 uses permissive language. (*Failla*, at p. 1521.) It provides that "[u]pon receiving satisfactory proof of [a law] violation the court *may* deny the petition and determine a new period of rehabilitation not to exceed the original period of rehabilitation for the same crime." (§ 4852.11, italics added.) "In general, of course, the word 'may' connotes a permissive standard as compared with the mandatory nature of the word 'shall.' [Citations.] It is clear the statute has been interpreted as vesting discretion in the trial court." (*Failla*, at p. 1521.) The court concluded, "Accordingly, section 4852.11 clearly confers upon a trial court the discretion to set the 'new period of rehabilitation' as long as it does 'not . . . exceed the original period of rehabilitation for the same crime.' " (*Ibid.*)

*Failla* instructs that when the defendant commits a new law violation during the rehabilitation period, it is within the trial court's discretion to determine the effect of that violation on the petition for certificate of rehabilitation. Contrary to the People's assertion that the court was required to deny the petition in this case because defendant was no longer statutorily eligible for a certificate of rehabilitation after he committed his new offense, section 4852.11 provides that the court "may," but was not required to, deny the petition. In summary, the permissive language in section 4852.11 gave the court the discretion to determine the effect of defendant's new offense on the

petition: it could deny the petition and determine a new period of rehabilitation or grant the petition in spite of the new offense.

▮ Returning to section 4852.11, we note that, if requested by the court, "[a]ny peace officer shall report to the court . . . *all violations of law* committed by [the] petitioner which may come to his knowledge." (§ 4852.11, italics added.) And when the court requests an investigation from the district attorney, the district attorney may report on the petitioner's "conduct . . . during the period of rehabilitation and all known violations of law committed by petitioner." (§ 4852.12) As we have noted, the language of sections 4852.11 and 4852.12 is broader than that used in the Proposition 36 scheme, since it requires peace officers and district attorneys to report on the defendant's conduct and report "all" "violations of law" that they have knowledge of, and is not limited to reports of "arrests or convictions."

The procedure employed in *Failla* is instructive. After the defendant in *Failla* filed his petition for a certificate of rehabilitation, the court requested an investigative report from the district attorney's office. At the hearing on the petition, the court considered the district attorney's "investigative report as well as a police report dated July 28, 1999," regarding an incident in which the defendant was allegedly beaten with a broom by Madsen. (*Failla, supra*, 140 Cal.App.4th at p. 1517.) According to the police report, the defendant told the officer that he went to Madsen's house to pay for marijuana he had previously purchased on credit, that Madsen became irate when the defendant did not have all the money, and started beating the defendant with a broom; Madsen told the officer that after he saw the defendant take a chainsaw out of Madsen's truck, Madsen grabbed a push broom and started beating the defendant. (*Ibid.*) At the hearing on the petition, the defendant denied using any type of illegal drug and testified that he went to Madsen's to pay for his son's marijuana. (*Ibid.*) Nothing in *Failla* suggests the defendant was arrested for, prosecuted for, or convicted of the theft and drug offenses described in the police report. However, the trial court concluded that there was satisfactory proof that the defendant had violated the law during the rehabilitation period and denied the petition for a certificate of rehabilitation.

In view of our construction of section 1210.1 and the statutes governing petitions for certificate of rehabilitation, we conclude that these statutory schemes do not preclude the presentation of evidence of the underlying conduct that led to defendant's arrest and conviction for a nonviolent drug possession offense at the hearing on his petition for a certificate of rehabilitation.

We turn next to the question whether the trial court abused its discretion in this case when it granted the petition for a certificate of rehabilitation.

## II. *Abuse of Discretion*

The People argue that the court abused its discretion when it granted defendant's petition for a certificate of rehabilitation, because defendant engaged in illegal conduct and used drugs in 2007, less than seven years prior to the hearing on the petition.[9]

Aside from the statutory interpretation questions, a petition for a certificate of rehabilitation is addressed to the trial court's discretion and the exercise of that discretion will be overturned only for manifest abuse that results in a miscarriage of justice. (*Blocker, supra,* 190 Cal.App.4th at p. 442, citing *Ansell, supra,* 25 Cal.4th at pp. 887–888 & *Lockwood, supra,* 66 Cal.App.4th at pp. 226–227.) "The standard test for ascertaining an abuse of that discretion is whether the court's decision exceeded the bounds of reason." (*Blocker,* at p. 444.) "More colorfully, it has been said that discretion is abused only when the trial court's ruling is arbitrary, whimsical, or capricious." (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 736 [67 Cal.Rptr.3d 615] (*Jacobs*), citing *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614 [38 Cal.Rptr.2d 868] and other cases.)

But other language describing the abuse of discretion standard guides us here. (*Jacobs, supra,* 156 Cal.App.4th at pp. 736–737.) " ' " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' " ' " (*Id.* at p. 737.) " 'Abuse of discretion has at least two components: a factual component . . . and a legal component. [Citation.] This legal component of discretion was best explained long ago in *Bailey v. Taaffe* (1866) 29 Cal. 422, 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Jacobs,* at pp. 737–738, citing *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1417 [111 Cal.Rptr.2d 511].) The scope of discretion resides in the particular

---

[9] As noted previously, the People's abuse of discretion argument quotes extensively from *Blocker.* However, the People do not explain how the cited language or the holding from *Blocker* apply in this case.

law being applied, and derives from the common law or statutes under which discretion is conferred. (*Jacobs*, at p. 737.) An abuse of discretion may be shown where the trial court was mistaken about the scope of its discretion. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [83 Cal.Rptr.3d 95].)

 In evaluating the court's exercise of its discretion in this case, we once again note that the extent of the court's investigation into the petitioner's rehabilitation is entirely within its discretion. (§§ 4852.1–4852.12.) "[A] court may, but is not mandated to, require 'testimony as it deems necessary' and an investigative report from the district attorney of the petitioner and his residence, in addition to any documentary evidence a petitioner presents." (*Lockwood, supra*, 66 Cal.App.4th at p. 228.) On the other hand, *Ansell* instructs that "the superior court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding. (§§ 4852.1–4852.12.) The standards for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13(a); see §§ 4852.11, 4852.13(b).) The decision whether to grant relief based on the evidence is discretionary in nature" and that "there is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court." (*Ansell, supra*, 25 Cal.4th at pp. 887–888.) When the trial court grants a petition for a certificate of rehabilitation it is "essentially making a personal representation to the Governor that [the petitioner is] worthy of pardon." (*Blocker, supra*, 190 Cal.App.4th at p. 445.)

We note that the record before the trial court was rather sparse. It consisted of (1) defendant's original form petition filed in June 2007, which contained basic information regarding his 1989 and 2000 drug offenses, as set forth in our statement of facts and (2) defendant's motion to renew his petition for certificate of rehabilitation, which mentioned his 2007 nonviolent drug possession offense and stated that he successfully completed his Proposition 36 drug treatment program and that his Proposition 36 conviction had been set aside. It does not contain any information regarding defendant's residence, employment, or activities during the rehabilitation period, other than the fact that he committed a nonviolent drug possession offense in 2007. And even the information regarding that offense is limited. The record does not disclose the circumstances of defendant's 2007 arrest, the type or amount of drug involved, whether defendant disputed the charges, or information relating to his rehabilitation program.

Nothing in the appellate record suggests that the court ordered any witness testimony, the production of documents, or an investigation by the district

attorney.[10] The court did not consider any evidence bearing on the petition other than the barebones factual allegations of the petition and the motion to renew. Under the statutory scheme, although it was within its discretion to do so, the court was not required to request such evidence. (§§ 4852.1–4852.12; *Lockwood, supra*, 66 Cal.App.4th at pp 228–229 [the trial court "relied on the evidence it deemed most credible" and was not required to do any further investigation if it was satisfied with the evidence before it].) On the other hand, given the sparseness of the record in this case, we question whether the court conducted the type of thorough inquiry contemplated by *Ansell*.

Moreover, the district attorney argued repeatedly below that even though the Proposition 36 statutory scheme prohibited the People from proving the arrest and conviction associated with defendant's 2007 nonviolent drug possession offense, the People could put on evidence of the underlying unlawful conduct.[11] The trial court responded that "the language ['] shall be deemed to have never occurred['] " in the statute was "an attempt to deal with the situation posed by" the People and granted the certificate of rehabilitation. Thus, the court rejected the People's contention and concluded that the statutory requirement that "both the arrest and the conviction shall be deemed never to have occurred" precluded the court from allowing the district attorney to present evidence of defendant's drug use. As we have explained, we interpret section 1210.1 differently and conclude that section 1210.1 does not preclude the presentation of evidence of the underlying conduct that led to defendant's arrest and conviction for a nonviolent drug possession offense at a hearing on a petition for certificate of rehabilitation. Given our construction of section 1210.1, former subdivision (d), we conclude that the trial court was mistaken about the scope of its discretion and

---

[10] We do not have a complete record of the proceedings on defendant's petition for a certificate of rehabilitation. The court conducted five hearings on the petition: three in 2007, one in 2010, and one in 2011. The record on appeal includes the reporter's transcripts of the hearings in 2010 and 2011. But, while we have the minute orders for the hearings in 2007, we do not have the reporter's transcripts of those proceedings. Thus, we do not know what matters were discussed, whether the court took any testimony or ordered an investigation or the production of records or witnesses, or why the hearings were continued.

[11] The district attorney argued: "[W]e, the People, have argued from the beginning that there's a crucial distinction between a conviction and the actual underlying behavior. That it is our view that there is no conflict between these two statutory schemes and that the successful completion of Prop 36 . . . legally it will effectively expunge their conviction." He stated: "It's not the People's intent to . . . adduce evidence through its official court papers of his conviction. Because that has, in fact, been expunged." Later, he argued: "It becomes an evidentiary matter, Your Honor. So in that case a peace officer is obligated to give the information to the Court, and materially you would want some sort of evidentiary hearing because you want anything, any allegation thought to bar someone from their certificate being granted. . . . [¶] If the court rules as I urge it to, . . . we would need to have an evidentiary hearing."

the evidence that it could consider in evaluating the petition for a certificate of rehabilitation. For these reasons, we hold that the trial court abused its discretion when it granted the certificate of rehabilitation in this case.

### DISPOSITION

The order granting the certificate of rehabilitation is reversed. The matter is remanded to the trial court for further proceedings on defendant's petition for certificate of rehabilitation.

Premo, Acting P. J., concurred.

**MIHARA, J.,** Concurring in the judgment.—While I agree that the superior court erred in granting the petition, my reasoning diverges from that of my colleagues. Therefore, I write separately to explain my analysis.

## I. Background

In June 2007, 58-year-old respondent Mitchell Lewis Zeigler filed a form petition seeking a certificate of rehabilitation. His petition listed his prior felony convictions. The one he described as his most recent felony conviction was a 2000 conviction for violating Health and Safety Code section 11350 (possession of a controlled substance). Zeigler asserted that he had received a suspended prison sentence, been granted probation, and been released from custody on that conviction in April 2000 "PTOR" (probation terminated on release). He described his second most recent felony conviction as a 1989 conviction for violating Health and Safety Code section 11352 (transportation or sale of a controlled substance).[1] Zeigler explained that he had originally been granted probation for the 1989 conviction, violated probation, been committed to prison, been released on parole, violated parole numerous times, and eventually been discharged from parole in 1999. Zeigler did not identify any other felony convictions in his petition. He signed the form's declaration, which read: "During the period of my rehabilitation, I have lived an honest and upright life, conducted myself with sobriety and industry, and exhibited good moral character. I have conformed to and obeyed all the laws of the land."

Zeigler's petition was originally scheduled for hearing on July 30, 2007. That hearing was continued to September 2007. The September hearing was continued to October 2007. In October 2007, the matter was taken off

---

[1] In his subsequent motion renewing his petition, Zeigler asserted that his 1989 conviction was for two counts of violating Health and Safety Code section 11352.

calendar, and the petition was withdrawn. At some point in 2007, Zeigler was arrested and charged with a nonviolent drug possession offense.[2] He resolved this charge under Proposition 36 (Pen. Code, § 1210 et seq.).[3]

In November 2010, Zeigler renewed his petition by way of a motion to which he attached his June 2007 petition. The motion asserted that the issue before the court was whether Zeigler's "2007 arrest and conviction can be used against him in this petition for a certificate of rehabilitation." However, in the conclusion of his points and authorities (but not in the body of the pleading), he also asserted that his "successful completion of Proposition 36 [probation] prevents use of that *offense* against him in a hearing for a certificate of rehabilitation" and that his "successful completion of Proposition 36 [probation] means that the court must treat *that offense* as if it never occurred." (Italics added.) A hearing on his motion was set for December 2010.

The prosecution filed opposition to Zeigler's petition. The prosecution noted that it had not yet done any investigation. However, it urged the court to resolve "the legal portion" of Zeigler's motion, after which "a decision can be made as to whether a subsequent investigation and hearing is appropriate." The prosecution argued that Zeigler's petition could not succeed because (1) it was premature, as he had only been released from probation in 2007, and (2) he had failed to "obey the laws" as required to obtain a certificate because he had violated the law in 2007 when he committed the nonviolent drug possession offense. The prosecution did not claim that Zeigler's arrest or conviction could be used to deny him a certificate, but it did contend that his violation of the law could be so utilized.

At the December 2010 hearing, the court told Zeigler: "Even if I did rule in your favor, it wouldn't mean that you were entitled to the relief you're seeking. You would just be clearing the first legal threshold. But as [the prosecutor] points out, it's a legal issue that should be resolved at the outset." The court then continued the hearing to January 2011.

After the December 2010 hearing, the prosecutor submitted supplemental briefing addressing *B. W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219 [215 Cal.Rptr. 130] (*B.W.*). The prosecutor acknowledged that Zeigler's conviction could not be used to support denial of his petition, but he asserted that it was undisputed that Zeigler had not obeyed the laws of the land during the previous seven years and therefore was "barred by statute from applying" for a certificate at this time.

---

[2] The record contains no details about this offense.

[3] Subsequent statutory references are to the Penal Code unless otherwise specified.

At the commencement of the January 2011 hearing, the court stated that "the issue here is whether his completion of Proposition 36, his 2007 conviction, which was dismissed, is a bar to this petition for a certificate of rehabilitation." The prosecutor argued that, while the conviction was wiped away by section 1210.1, "there's a distinction between a conviction and the actual behavior." Because a requirement to obtain a certificate is that the petitioner has "obey[ed] the laws," the underlying behavior, in the prosecutor's view, disqualified Zeigler from obtaining a certificate. He maintained that, if the court agreed with him, an evidentiary hearing would be required in order to prove up the prosecution's claim that Zeigler had not obeyed the laws. "Prop 36 eliminates a disability of a conviction, but it doesn't make it as if the underlying behavior didn't occur . . . ." The prosecutor contended that the underlying behavior could establish that Zeigler had not obeyed the laws and therefore could not obtain a certificate.

The court rejected this argument and abruptly stated: "So, therefore, the Court will grant the certificate. [¶] Congratulations." The prosecutor did not object to the court's failure to hold an evidentiary hearing. The prosecution timely filed a notice of appeal from the court's ruling.

## II. Discussion

The prosecution contends that the trial court erred in three respects: (1) the court erred as a matter of law in finding Zeigler *eligible* to file a petition; (2) the court erred as a matter of law in concluding that Zeigler's 2007 offense would be *inadmissible evidence* at a hearing on the merits of Zeigler's petition; and (3) the court erred in granting the petition without holding an evidentiary hearing.

### A. Eligibility to File Petition

Any person convicted of a felony, committed to state prison, and not thereafter incarcerated may file a petition for a certificate of rehabilitation. (§ 4852.01.) "The period of rehabilitation shall begin to run upon the discharge of the petitioner from custody due to his or her completion of the term to which he or she was sentenced or upon his or her release on parole or probation, whichever is sooner." (§ 4852.03, subd. (a).) "Unless and until the period of rehabilitation, as stipulated in this section, has passed, the petitioner shall be *ineligible* to file his or her petition for a certificate of rehabilitation with the court." (§ 4852.03, subd. (b), italics added.)

The prosecutor contends that Zeigler was "ineligible to file . . . his petition" because his "period of rehabilitation" had not "passed" when he renewed his petition in 2010. The applicable "period of rehabilitation" for Zeigler's 2000 conviction was seven years. (§ 4852.03, subd. (a)(3).) Zeigler asserted that this period began to run in 2000, upon his release from custody, and "passed" in 2007. The prosecutor maintains that this seven-year period did not "begin to run" until Zeigler's "release on . . . probation" *in 2009*, after his 2007 offense, and therefore will not have "passed" until 2014.

The prosecutor's position is not supported by the structure of the statutory language. Section 4852.03 links the period of rehabilitation to the specific conviction that is the subject of the petition for a certificate. It states that this period "shall begin to run upon *the discharge* of the petitioner from custody due to his or her completion of *the term* to which he or she was sentenced or upon his or her release on parole or probation, *whichever is sooner*." (§ 4852.03, subd. (a), italics added.) If this language had been intended to refer to any release from custody from *any* conviction, it would not have referred to "*the* discharge" and "*the* term" or stated that the "sooner" one was the applicable one. (§ 4852.03, subd. (a), italics added.) Instead, it would have referred to the petitioner's "last" or "most recent" discharge or term. Consequently, the relevant time when the period began to run was Zeigler's 2000 release from custody for his 2000 conviction, and Zeigler was not ineligible to file a petition.

## B. Admissibility of Evidence of 2007 Offense

The main focus of the prosecutor's appeal is the claim that Zeigler's 2007 offense was admissible in opposition to his petition for a certificate. "[A]fter the expiration of the minimum period of rehabilitation applicable to him or her (and, in the case of persons released upon parole or probation, after the termination of parole or probation), each person *who has complied with the requirements of Section 4852.05* may file in the superior court of the county in which he or she then resides a petition for ascertainment and declaration of the fact of his or her rehabilitation and of matters incident thereto, and for a certificate of rehabilitation under this chapter." (§ 4852.06, italics added.) The "requirements of Section 4852.05" are that "[t]he person shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and *obey the laws* of the land." (§ 4852.05, italics added.)

The prosecution argues that it should have been permitted to establish that Zeigler's commission of the 2007 offense showed that he had not "obey[ed]

the laws" during the period of rehabilitation and therefore did not satisfy the requirements necessary to obtain a certificate of rehabilitation. Zeigler contends that his 2007 offense could not be considered in determining whether he met the requirements for a certificate due to his completion of Proposition 36 probation.

Section 1210.1, former subdivision (d) (part of Prop. 36) provided: "[I]f the court finds that the defendant successfully completed drug treatment, and substantially complied with the conditions of probation, the conviction on which the probation was based shall be set aside and the court shall dismiss the indictment, complaint, or information against the defendant. In addition, except as provided in paragraphs (2) and (3), *both the arrest and the conviction shall be deemed never to have occurred.* Except as provided in paragraph (2) or (3), the *defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted.*" (§ 1210.1, former subd. (d)(1), italics added; see Stats. 2001, ch. 721, § 3, p. 5616.)

Thus, section 1210.1 provides that, if a defendant successfully completes Proposition 36 probation, (1) "both the arrest and the conviction shall be deemed never to have occurred," and (2) the defendant "shall thereafter be released from *all penalties and disabilities resulting from the offense* of which he or she has been convicted." (§ 1210.1, former subd. (d)(1), italics added.) The prosecutor acknowledged below that he could not use evidence of Zeigler's arrest or conviction in the certificate proceedings.[4] He sought the

---

[4] In contrast to its position below, the prosecution contends on appeal that Zeigler's arrest and conviction could be utilized as evidence in the certificate proceedings. At oral argument, the prosecution relied on the statutory exceptions in section 1210.1, former subdivision (d), "paragraphs (2) and (3)." Paragraph (2) provides that "paragraph (1) does not permit a person to own, possess, or have in his or her custody or control" a concealable firearm. Paragraph (3) provides that, with one exception, a defendant may state that he or she has not been arrested for or convicted of the offense, and no record of the arrest or conviction may be used to deny the defendant "any employment, benefit, license, or certificate." The exception is that the arrest and conviction "may be recorded by the Department of Justice and disclosed in response to any peace officer application request or any law enforcement inquiry," and the defendant must "disclose the arrest and conviction in response to any direct question contained in any questionnaire or application for public office, for a position as a peace officer as defined in Section 830, for licensure by any state or local agency, for contracting with the California State Lottery, or for purposes of serving on a jury." (§ 1210.1, former subd. (d).)

Paragraphs (2) and (3) of section 1210.1, former subdivision (d) plainly do not apply here. Firearms are not involved. Paragraph (3)'s provisions that the Department of Justice may "*record*[]" the arrest and conviction and that it may be "*disclosed* in response . . . to any law enforcement inquiry" do not establish that evidence of the arrest or conviction is *admissible evidence in court* in certificate of rehabilitation proceedings. (§ 1210.1, former subd. (d), italics added.)

admission of evidence of Zeigler's 2007 "behavior" or "conduct" in the certificate proceedings. The trial court ruled that such evidence was inadmissible. The question before us is whether section 1210.1's language providing that Zeigler would "be released from all penalties and disabilities resulting from the [2007] offense" precluded the prosecutor from introducing evidence of Zeigler's 2007 conduct in the certificate proceedings. (§ 1210.1, former subd. (d)(1).)

Although the trial court and the parties have placed much emphasis on the decision in *B.W.*, that decision is unhelpful. The issue in *B.W.* was whether the Board's reliance on an arrest report to discipline a licensee was improper where the licensee had completed a diversion program that resulted in " 'the arrest upon which the diversion was based [being] deemed to have never occurred.' " (*B.W., supra,* 169 Cal.App.3d at pp. 228–229.) Since the prosecutor in this case does not seek to use evidence of Zeigler's arrest for any purpose, the decision in *B.W.* is not on point.[5]

The meaning of "released from all penalties and disabilities resulting from the offense" is not defined in section 1210.1, but this same language appears in section 1203.4 (and several other statutes). "As used in section 1203.4 of the Penal Code the words 'penalties and disabilities' have reference to criminal penalties and disabilities or to matters of a kindred nature." (*Copeland v. Department of Alcoholic Beverage Control* (1966) 241 Cal.App.2d 186, 188 [50 Cal.Rptr. 452].) "[I]t cannot be assumed that the Legislature intended that [this language would] obliterat[e] *the fact* that the defendant had been finally adjudged guilty of a crime." (*Meyer v. Board of Medical Examiners* (1949) 34 Cal.2d 62, 65 [206 P.2d 1085], italics added.) "California decisions have established that the 'penalties and disabilities' resulting from conviction, from which a probationer may be released pursuant to Penal Code section 1203.4, do not include nonpenal restrictions or qualifications imposed for public protection . . . . [¶] Our courts have drawn a distinction between penalties imposed on a felon as further punishment for the crime, as to which vacation under Penal Code section 1203.4 generally affords relief, and nonpenal restrictions adopted for protection of public safety and welfare." (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1230 [108 Cal.Rptr.2d 610, 25 P.3d 1090].) The California Supreme Court held that the disabilities from which a certificate can release a petitioner "serve vital public interests," are civil rather than criminal, and do not involve punishment for the underlying crime. (*People v. Ansell* (2001) 25 Cal.4th 868, 888–889 [108 Cal.Rptr.2d 145, 24 P.3d 1174].)

---

[5] The prosecutor below, that is, does not seek to do so. The prosecutor on appeal seeks to do so on an unmeritorious basis. (See fn. 4, *ante.*)

These cases establish that section 1210.1's "penalties and disabilities" language does not extend to civil, nonpunitive disabilities imposed to serve the public interest. To the extent that Zeigler's 2007 conduct affects his ability to obtain a certificate, that "disability" is, like the disabilities from which a certificate can release a petitioner, civil, nonpunitive, and imposed to serve the public interest. Zeigler's potential inability to obtain a certificate due to his 2007 conduct is therefore not the type of disability to which the release in section 1210.1 applies. It follows that the trial court erred in concluding that evidence of Zeigler's 2007 conduct was barred due to section 1210.1.

## C. Proceedings on Remand

The statutory scheme leaves much to the discretion of the court. "The court in which the petition is filed *may* require such testimony as it deems necessary, and the production" of records and reports, including those "concerning the conduct of the petitioner since his release on probation or parole or discharge from custody." (§ 4852.1, italics added.) "[T]he court . . . *may* request from the district attorney an investigation" of the petitioner. (§ 4852.12, subd. (a), italics added.)

The prosecutor in this case clearly wished to conduct such an investigation and to present it to the court. The prosecution believed that the court would resolve "the legal portion" of Zeigler's motion, after which "a decision can be made as to whether a subsequent investigation and hearing is appropriate." At the December hearing, the court endorsed this approach when it told Zeigler that "[e]ven if I did rule *in your favor*, it wouldn't mean that you would be entitled to the relief you're seeking. You would just be clearing the first legal threshold." (Italics added.) However, at the January hearing, after the prosecutor argued that an evidentiary hearing would be required *if the court ruled in the prosecution's favor*, the court simply granted the petition without any evidentiary hearing.

The court's erroneous ruling on the "legal portion" of the petition led it to preclude the prosecution from producing evidence at an evidentiary hearing. On remand, the trial court should vacate its order and hold a hearing to provide an opportunity for the prosecution to seek admission of evidence. "[I]f after hearing, the court finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship, the court may make an order declaring that the petitioner has been rehabilitated, and recommending

that the Governor grant a full pardon to the petitioner." (§ 4852.13, subd. (a).) It remains to be seen whether, after correcting its legal error, the trial court will determine that Zeigler is entitled to a certificate of rehabilitation. That decision must await a hearing on remand.

Respondent's petition for review by the Supreme Court was denied March 13, 2013, S207889.