Filed 9/12/16  P. v. Woods CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077638 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F02931) |
| v. | |
| KENNETH BRUCE WOODS, | |
| Defendant and Appellant. | |

Although state law prevents people convicted of certain sex crimes with children from obtaining a judicial certificate of rehabilitation to facilitate a gubernatorial pardon (Pen. Code, § 4852.01, former subd. (d); further statutory references are to the Penal Code), the trial court provided Kenneth Bruce Woods (petitioner), who admitted performing a variety of lewd and lascivious acts against his daughter, a hearing to determine whether he should be granted a certificate.  Because we cannot say the trial court abused its discretion by denying petitioner's request for a certificate of rehabilitation, we affirm the judgment.  Petitioner challenges the constitutionality of a statutory provision making child sex offenders ineligible for certificates of rehabilitation.  However, the trial court did not apply the restriction; we therefore decline to consider his

1

equal protection and due process challenges to the statute, section 4852.01, former subdivision (d).

# I

# LEGAL LANDSCAPE

A felon seeking a pardon from the Governor can apply to the Governor directly (§ 4800 et seq.) or, as here, seek a certificate of rehabilitation from the superior court as a prelude to application for a gubernatorial pardon. "[T]he certificate of rehabilitation procedure is available to convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained 'period of rehabilitation' in California." (*People v. Ansell* (2001) 25 Cal.4th 868, 875 (*Ansell*).) During the period of rehabilitation, "[t]he person shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land." (§ 4852.05.)

"Proceedings begin when a qualified person petitions for a certificate of rehabilitation in the superior court of the county in which he lives. (§ 4852.06 . . . .) . . . .

"The superior court holds a hearing and considers testimonial and documentary evidence bearing on the petition. (§§ 4852.1, 4852.11.) . . . .

"To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction. (§ 4852.13, subd. (a).)" (*Ansell*, *supra*, 25 Cal.4th at pp. 875-876.) " 'The decision whether to grant relief based on the evidence is discretionary in nature. . . . [T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court.' [Citations.]" (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 654 (*Zeigler*).)

## II
## FACTS

Petitioner practiced as a medical doctor specializing in urology. His medical practice in St. Helena was not financially successful, and he was unhappy in his marriage. He had many extramarital affairs. When the eldest of his three daughters was five years old, he moved his family to Rocklin. Over time, he encouraged her to squeeze his erect penis and he touched her clitoris with his finger. He has consistently maintained that his wife suggested he take a shower with his daughter when she was nine years old. Stimulated, he touched her sexually and orally copulated her.

Two years later, he asserts his wife again suggested he shower with the same daughter. He became sexually aroused and rubbed his penis between her thighs. When she was almost 14, "he had felt rejected and abandoned by his whole family because they were always busy and were not spending time with him." He touched his daughter's breasts and clitoris, and again orally copulated her. That was the last time he touched her inappropriately.

When she was 16, defendant's daughter reported the molestations and oral copulation to a school counselor. At the time he believed that she reported the incidents because he had flirted with her dance instructor at a party at their house. He justified his offending as " 'not as injurious as sexual intercourse,' as helping her to feel sexual pleasure, as not hurting her emotionally and as the behavior being for her own gratification and not his." He did not deny her accusations. He admitted to the charges, spent eight months in jail, and spent seven years on probation. He surrendered his medical license. His wife divorced him and moved with the children to San Diego.

While on probation he sent a letter to his youngest daughter when she turned 18 years old. He also wrote to her older sister. After completing probation he wrote a letter addressed to all three girls on Father's Day. He expressed guilt and remorse, but much of the letter was focused on his need to reestablish a relationship with them and

how much he missed them.  Afraid that their mother was dissuading them from communicating with him, he lectured them on their right to reestablish a relationship with him and warned them that they risked having a void in their lives without him.  He wrote, "If either parent tries to 'control' the children by not allowing access to the other parent, or disapproving if they express a desire to see the other parent, it is not a healthy thing, even in situations like ours."  He emphasized he had never been violent and remained a sentimental, emotional person.  He asked them to write, call, or e-mail him.

His youngest daughter wrote on behalf of herself and her sisters.  In a warm, friendly letter, she acknowledged the progress he appeared to have made in rehabilitation and she wished him happiness.  But she refuted his warnings and wrote pointedly:  "I understand that you are genuinely sorry for what you did, and that you really do miss and love us.  However, I must tell you that I do not reciprocate these feelings.  I am sorry that you feel a void in your life without us, but I cannot say I feel the same way.  Since December 2000, the four of us have created a uniquely strong and special bond with one another.  My mom and sisters are the only family I need, and I have never felt a void from not having communication with you.  While you are my biological father, I do not see you as a 'dad.'  Fathers are created through genes and biology, but dads are created through love, trust, and respect.  Unfortunately, I permanently lost all love, trust, and respect for you ten years ago."

In conclusion, she was explicit:  "I hope you understand how I feel, and know that my feelings are shared by my mom and sisters as well.  I accept your words, but I'm afraid I cannot offer forgiveness. The best thing for everyone to do is move on and make the most of the life they have.  I have found genuine happiness in my life, and I wish the same for you.  However, I ask that you respect my request on behalf of my family to not contact any of us from this point on.  Find love and forgiveness within yourself when you cannot find it from others."

Seeking to have his medical license reinstated, petitioner obtained three psychological evaluations. All three report nearly identical factual findings and reach the same conclusions. Each psychologist concludes petitioner does not pose a risk to patients and recommends that his license be reinstated. The same evaluations were submitted to the court as proof petitioner has been rehabilitated within the meaning of section 4852.01.

The pertinent facts and findings from the evaluations are as follows. Petitioner readily admitted his guilt once his daughter reported the molestations. He was a model prisoner and probationer. He faithfully participated in a sex offender program and continued individualized therapy and a therapy group for sex offenders when the program was completed. Through this process he was able to identify and correct his distorted thinking, to understand his needs, and to design a set of protocols to minimize the risk of recidivism. He reduced and then eliminated the psychiatric medications he had taken for depression following his arrest. He does not drink or use illegal drugs.

Petitioner proactively sought employment, obtained an additional master's degree in business administration, and became an active volunteer at his church. He cultivated friendships with women of his own age and, at the time of his petition, planned to marry another church member. He is a talented musician and has performed in many community opera productions.

Nevertheless, he has had a very difficult time earning a living. He passed an examination to obtain an insurance broker's license, but he was denied a license because of his conviction. He was fired from another job when a nurse found his name on the sex offender registry and complained to his employer.

Petitioner performed well on a number of tests designed to predict the chance he will reoffend. The psychologists unanimously agree that he should no longer be labeled a pedophile and he no longer poses any risk to children. Indeed, the risk that he will reoffend now that he is in his 60's is lower than for men who have never offended. Dr. Amy Phenix's conclusion is typical of what her peers also wrote. "Statistically,

5

Dr. Woods poses no greater risk to sexually reoffend than any male in the community who has never committed a sexual offense. Except for having a prior sex offense, Dr. Woods has none of the static risk factors that contribute to increased risk to sexually reoffend and few dynamic risk factors for sexual reoffense. His age (61) is a strongly mitigating risk factor. Considering Dr. Woods's psychological rehabilitation and growth as well as evidence-based risk assessment, I can confidently say that he no longer poses a possible risk to patients or the general community. Dr. Woods is fully competent to practice medicine. Due to his extremely low risk of sexual reoffense, Dr. Woods should not have limitations on the sex or age of the patients he treats." As reported by Dr. Phenix, Dr. Jannelle Burrill, his personal therapist, believes his risk of reoffense is the " 'lowest of low.' "

Petitioner did not testify at the hearing. Instead, he submitted a written statement.

Four past or present members of his church testified on his behalf. All of them testified that petitioner had disclosed to them he had molested his daughter. But they knew few, if any, of the details. They all asserted he was a law-abiding citizen, a dedicated volunteer and church member, and an honest, sober, trustworthy person. They are comfortable socializing with him. They believe he is remorseful. The general manager of a youth symphony, however, had learned more by reading the disclosures on the Megan's Law-mandated Web site and would not have hired him to be around children.

Petitioner also submitted numerous letters from medical professionals and community members who advocated for reinstatement of his license. Many believed him to be a worthy citizen and others expressed their appreciation for his volunteer work.

The trial court denied the petition on the merits. The court pointed out that the documents submitted in support of the petition pertained, in the most part, to the reinstatement of his license rather than to the petition for a certificate of rehabilitation. Indeed, the court warned petitioner at the outset of the hearing that the evidence was

6

directed toward the reinstatement of his license. Nevertheless, petitioner offered no additional documentary evidence in support of his petition.

In denying the petition, the court found the witnesses lacked credibility because they did not know many of the facts surrounding the commission of the offense. Petitioner provided these witnesses a limited and selected version of the facts underlying his conviction. Moreover, the court explained: "The evident hearsay statements of Petitioner to his witnesses, to include psychological submissions, do not substitute for his own testimony that is directed to his guilt, responsibility for his actions, insight and expressed remorse—in short, to his rehabilitation—the very focus of this proceeding."

## III

## DISCUSSION

### A. Standard of Review

Petitioner insists the uncontroverted evidence demonstrates that he is rehabilitated. We agree there is evidence to support a factual finding he is rehabilitated, including evidence he successfully completed a sexual offender program, he continued to participate in group and individual therapy after completing the program, he furthered his education to broaden his employment opportunities, he actively sought employment, he volunteered at his church and in musical performances, he has committed no other crimes and has been weaned from taking antidepressants, he has cultivated friendships and is in a committed relationship with a woman of his approximate age, and he has attempted to reconcile with his daughters. But the issue presented in this case is not whether the evidence would support a finding that he is rehabilitated, but whether the trial court's decision to the contrary can be upheld. Thus, resolution of petitioner's appeal depends on the application of the appropriate standard of review.

In 1996 the Legislature amended Penal Code section 4852.01 et seq. Those amendments reflect a clear intent to give trial courts enhanced discretion to deny a petition for a certificate of rehabilitation. "The changes also reflected the Legislature's

7

desire to provide the trial courts with the 'express discretion' to grant or deny petitions for rehabilitation certificates.  (Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 2017 (1995-1996 Reg. Sess.) June 25, 1996; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2017 (1995-1996 Reg. Sess.) April 16, 1996.)  This intent is manifest in the changes the Legislature made to section 4852.13.  Prior to its effective date of July 8, 1996, section 4852.13 stated in relevant part:  'If, after hearing, the court finds that the petitioner has demonstrated by his course of conduct his rehabilitation and his fitness to exercise all of the civil and political rights of citizenship, the court *shall* make an order declaring that the petitioner has been rehabilitated . . . .'  (Stats. 1978, ch. 380, § 126, p. 1189, italics added.)  The word 'shall' was changed to 'may' by the 1996 amendments.  [Fn. omitted.]  (Stats. 1996, ch. 981, § 6.)"  (*People v. Lockwood* (1998) 66 Cal.App.4th 222, 227.)

It is now well accepted that "a petition for a certificate of rehabilitation is addressed to the trial court's discretion and the exercise of that discretion will be overturned only for manifest abuse that results in a miscarriage of justice.  [Citation.] 'The standard test for ascertaining an abuse of that discretion is whether the court's decision exceeded the bounds of reason.'  [Citation.]  'More colorfully, it has been said that discretion is abused only when the trial court's ruling is arbitrary, whimsical, or capricious.'  [Citation.]"  (*Zeigler*, *supra*, 211 Cal.App.4th at p. 667.)  Petitioner argues the trial court abused its discretion by finding, in the face of all evidence to the contrary, that he has not been rehabilitated.  We disagree.

## B.    No Abuse of Discretion

Petitioner raises four objections to the reasons the court articulated on the record for denying his petition for a certificate of rehabilitation.  We address each in turn.

Petitioner complains that the trial court "sandbag[ged]" him or played "hide-the-ball" by failing to ask him to testify.  Given the stakes, he suggests the trial court's failure to warn him of the consequences of not testifying amounts to a denial of due process.

8

But he does not offer any authority to support his notion of a trial court's sua sponte obligation to advise a petitioner what evidence he should present. We reject his novel proposition that a trial court has a duty to assist a petitioner in sustaining his or her burden of proof. As the Attorney General aptly points out, nothing prevented petitioner from testifying.

Moreover, he takes the court's comment out of context. For reasons we will discuss herein, the court was unimpressed by the testimony of petitioner's four witnesses. In explaining the weaknesses in their testimony, the court also commented that their testimony did not substitute for petitioner's personal expression of guilt and remorse. In the absence of his testimony, the court was unable to find he had accepted full responsibility for his conduct. Lurking in his friends' testimony, as well as earlier psychological evaluations, was the accusation that petitioner's wife had encouraged his behavior by asking him to shower with the victim. The court reasonably concluded that any insinuation that his wife was to blame was a deflection of his own responsibility. We cannot say the trial court abused its discretion by devaluing the witnesses' testimony in the absence of sworn testimony by petitioner himself.

We next examine the testimony of petitioner's four church friends, offered to prove he was rehabilitated. Petitioner appears to have become immersed in church activities. All four witnesses were church members. At the time of his hearing, he hoped to marry another church member. He sang in the choir and volunteered in a variety of church activities. But none of the four witnesses evidenced an understanding of the circumstances surrounding his offenses. It is true they believed him to be an upstanding citizen filled with remorse for what he had done. Without the specific knowledge that petitioner had orally copulated his nine-year-old daughter and engaged in his deviant behavior for over five years, their views of their friend might have been superficial and their abilities to attest to his rehabilitation of questionable value. In any event, we cannot

9

say the trial court abused its discretion by concluding their assessments of his rehabilitation were of limited value.

Nor do we accept petitioner's contention that the witnesses' testimony was only marginally relevant. Evidence of petitioner's rehabilitation is the very essence of his case.

The court stated at the outset of the proceedings, and again in denying his petition, that the documentation was directed toward reinstatement of his medical license and not to the issue of rehabilitation within the meaning of section 4852.01 et seq. The record supports the court's observation. Petitioner was referred to Dr. Amy Phenix "to determine whether [petitioner] 'poses a possible risk to patients' as a result of his criminal sexual behavior resulting in his 2001 convictions." She concluded he was fit to practice medicine. Similarly, Drs. Charlene Steen and Deborah Schmidt evaluated petitioner for the same purpose, and both concluded he did not pose a risk of engaging in inappropriate sexual behavior with future medical patients. Since many of the letters submitted in support of the petition were also directed to his fitness to practice medicine, the court did not abuse its discretion in determining that the bulk of the evidence was directed to the reinstatement of his medical license rather than to the propriety of issuing a certificate of rehabilitation.

There is no evidence in the record that petitioner treated children in his urology practice or that he had molested any of his patients. As a result, evidence that he was not a danger to his adult patients was not necessarily probative of the critical question whether petitioner would reoffend by molesting children. The court could reasonably discount the value of reports and evaluations that focused on the very different question of whether he was fit to practice medicine.

Finally, petitioner claims there is no support for the court's finding that he was likely to reoffend. As the Attorney General points out, the court never made that finding. With respect to petitioner, the court observed that the psychological assessments

10

suggested "[p]etitioner is unlikely to repeat the conduct that led to his conviction." But with respect to sex offenders in general, the court merely pointed out that sex offenders had statistically significant odds of recidivism, a fact that had prompted the Legislature to impose a lifetime sex offender registration requirement.

The Legislature has imbued the trial court, not the appellate court, with the responsibility and the discretion to determine if a convicted felon has been rehabilitated. The court was able to assess the credibility of the witnesses, and it justified its findings on multiple grounds. But that is not to say that those were the only justifications for its ruling. For example, the court might have found that petitioner's letters to his daughters focused more on his needs than theirs and that lingering narcissism might pose a risk of deviant behavior in the future. But we need not speculate on additional justifications for the court's ruling because the reasons examined above convince us the court's decision was neither arbitrary nor capricious. To the contrary, there is ample evidence to support the trial court's ruling denying a certificate of rehabilitation and thus the court did not abuse the discretion the Legislature has vested in it.

Finally, we note petitioner's constitutional challenge to section 4852.01, which provides that persons convicted of violating section 288, subdivision (a) are ineligible to receive a certification of rehabilitation. Here, the court declined to invoke the statutory restriction and resolved the petition on the merits. Consequently, there is no need to consider petitioner's constitutional challenge.

## DISPOSITION

The judgment is affirmed.

RAYE , P. J.

We concur:

NICHOLSON , J.

RENNER , J.