Filed 9/20/16  P. v. Thompson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ROY LEE THOMPSON,<br><br>    Defendant and Respondent. | 2d Crim. No. B268078<br>(Super. Ct. No. MA-002-15)<br>(Ventura County) |

Roy Lee Thompson appeals a postjudgment order denying his petition for a certificate of rehabilitation and pardon.  (Pen. Code, § 4852.01.)[1]  The trial court concluded that appellant did not satisfy the high standards necessary to grant the petition.  (See § 4852.13, subd. (a); *People v. Blocker* (2010) 190 Cal.App.4th 438, 445.)  We affirm.

In 1977, appellant was convicted by jury of forcible rape of a 19-year-old woman in Kern County (former § 261.2) and admitted six out-of-state felony convictions: two for rape, two for attempted rape, an abduction, and a conviction for unlawful wounding.  Appellant served a three-year prison sentence, was paroled in 1982, and, in 2015, filed a petition for a certificate of rehabilitation and pardon.  Denying the petition, the trial court stated:  "It's important to point out my role here today in issuing any

---

[1]    All statutory references are to the Penal Code.

decision is a discretionary act that would only be overturned for a manifest abuse [of discretion] that results in a miscarriage of justice. . . [¶]  And it occurs to me that while justice is a broad term, it doesn't apply just to [appellant].  It applies also to the victims in these other cases.  Without stating more, your [petition] is denied."

*Discussion*

Appellant contends that the trial court erred in assuming that the conviction for forcible rape was so heinous that it precluded the court from granting the petition as a matter of law.  "Section 4852.13 gives the court discretion to decide whether a petitioner has demonstrated to the court's satisfaction, 'by his or her course of conduct his or her rehabilitation and . . . fitness to exercise all of the civil and political rights of citizenship.' (§ 4852.13, subd. (a).)"  (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 653.)  Because the standards for determining whether rehabilitation has occurred are high, "there is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court."  (*People v. Ansell* (2001) 25 Cal.4th 868, 887-888.)  To prevail on appeal, must show that the trial court's ruling was arbitrary, whimsical, or capricious.  (*People v. Zeigler*, *supra*, 211 Cal.App.4th at pp. 667-668.)

Appellant's rape conviction was not just any crime, "but one whose statistically significant odds of recidivism moved the Legislature to impose the lifetime registration requirement of section 290 on the theory that 'sex offenders pose a "continuing threat to society" [citation] and require constant vigilance.' [Citation.]" (*People v. Blocker*, *supra*, 190 Cal.App.4th at p. 445.)  Appellant committed the rape while on parole and, like the prior convictions (all sexual assaults in Virginia), used a ruse to isolate a young woman and used violence to force sex upon the victim.

The Kern County rape conviction was based on the following facts. Appellant, a 33-year-old Vietnam veteran, followed a 19-year-old victim after she left a coffee shop outside of Bakersfield at 4:00 a.m. on May 8, 1977.  Appellant pulled up next to the victim at a stop light and said her rear tire was wobbling and about to fall off. Appellant flashed his lights and pulled up behind the victim when she stopped to look at the tire.  Appellant offered to drive the victim home but she refused.

Appellant forced himself into the victim's car, choked her, and repeatedly punched her in the stomach as she fought back. Appellant ordered the victim to remove her pants and threatened to hit her again if she did not submit. Appellant raped the victim, asked if she was going to call the police, and said "'Would you believe if I told you I was sorry?'" Appellant asked the victim a series of personal questions and used the victim's sweater to clean himself and wipe the car down for fingerprints before leaving.

Two days later, a woman read a newspaper account of the rape and reported that appellant attempted to rape her on March 8, 1977 using the same modus operandi. Appellant followed the victim home in the early morning hours, blinked his lights on and off, and told the victim that her back wheel was wobbling. Appellant grabbed the victim and threatened to "cut" her if she did not submit to sex before the victim escaped.[2]

Appellant was convicted of forcible rape on October 28, 1977 and admitted six prior felony convictions, all committed in Virginia and involving sexual assaults. Before sentencing, appellant vehemently denied committing the Kern County rape and said it was a case of misidentification. Appellant was sentenced to three-years-to-life state prison, paroled on January 26, 1982, and discharged from parole a year later.

Appellant's petition for rehabilitation, filed on January 14, 2015, was less than forthcoming about the details of the rape and the prior convictions. Appellant minimized the seriousness of the crime and said "the post-traumatic stress of war coupled with the betrayal of my wife and mother of our two children appears to be a substantial contributor and trigger." Appellant stated that his feelings of guilt or shame "may never change" and that he had rehabilitated himself from "the remnants of a wounded, shattered, and bewildered man." Appellant said it took "extensive therapy to understand all the reasons why . . . ."

---

[2]    In the Virginia rapes, appellant brandished a knife and threatened to cut the victims' throats.

The Ventura County District Attorney Bureau of Investigation interviewed appellant and submitted a report which was reviewed by the trial court. (§ 4852.12.) Appellant was asked, "In your own words, tell what happened in each case you are applying for." Appellant responded "I sexually assaulted a woman." Appellant was asked to describe the circumstances of the rape, which was important because appellant committed the rape while on parole after serving a lengthy sentence in Virginia. Appellant said that he did not remember.

When the investigator offered to read the Kern County and Virginia probation reports to refresh appellant's memory, appellant requested that the reports not be read. Appellant declined to discuss the circumstances of the offenses and would not acknowledge that the six prior convictions were an integral part of the Kern County rape. Despite the investigator's repeated questions, appellant "either could not or would not summarize the crimes."

The investigator told appellant that the Virginia and California offenses were egregious and asked how appellant was a different person today. Appellant said that he accepted responsibility, had paid the cost, and "has learned to be honest about his history." Appellant claimed that he had made full disclosures to family, friends, and neighbors about his criminal past.

The investigator reported that appellant was married five times and did not tell his third wife, Sandra J., about the rape conviction. Sandra was married to appellant from 1991 to 2000 and said that appellant told her only about one rape in Virginia. Appellant told her that he suffered a psychotic rage when he returned from Vietnam and discovered that his first wife was having an affair. Appellant claimed the Virginia court found him criminally insane and sentenced him to a mental hospital. The third wife had no idea that appellant served prison time in Virginia or was convicted of rape in Kern County.

Citing *In re Lawerence* (2008) 44 Cal.4th 1181, appellant argues that his situation is analogous to a convicted murder seeking parole who meets all the statutory criteria for parole. But a prisoner's lack of insight into the reasons for his commission of

the commitment offence is relevant in determining suitability for parole. (*In re Shaputis* (2008) 44 Cal.4th 1241, 1261.)

Here the trial court could have reasonably concluded that appellant's reluctance to describe the circumstances of the 1997 rape and the Virginia sexual assaults showed lack of insight and rehabilitation. Appellant claimed that he suffered from PTSD but presented no evidence that he received therapy or treatment. Appellant said that he could not recall the circumstances of the rape but provided no evidence that he suffered from memory loss or cognitive impairment. The trial court reasonably concluded that appellant was less than forthcoming about his criminal record and that it was a cloud on appellant's claimed rehabilitation. We cannot say that denial of the petition exceeded the bounds of reason or was arbitrary or capricious. "The hurdles erected by the Legislature to obtain a certificate of rehabilitation are not intended to be easily surmounted. The trial courts are entrusted with the responsibility, in the exercise of sound discretion, to ensure that the strict statutory standards for rehabilitation are maintained. [Citations.]" (*People v. Blocker*, *supra*, 190 Cal.App.4th at p. 445; *People v. Ansell*, *supra*, 25 Cal.4th at p. 887 [standards for determining whether rehabilitation has occurred are "high"].)

The judgment (order denying petition for certificate of rehabilitation and pardon) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

5

Jeffrey Bennett, Judge

Superior Court County of Ventura

_____

Law Office of C. Matthew Missakian, Matthew Missakian, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.