Filed 10/26/23  In re S.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.C.,<br><br>    Defendant and Appellant. | F084765<br><br>(Super. Ct. No. JJD073464)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Glade F. Roper, Judge.  (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P. J., Meehan, J. and Snauffer, J.

Minor S.C. contends on appeal that the juvenile court's jurisdictional findings and dispositional order must be reversed and remanded because (1) the court erred in admitting minor's written confession; (2) there is insufficient evidence supporting minor's conviction for vandalism; and (3) the prosecution failed to determine minor's eligibility for deferred entry of judgment (DEJ). The People agree the matter must be remanded to allow the court to determine whether minor is suitable for DEJ, but contend the court did not err in admitting minor's written confession and that there is sufficient evidence to support minor's conviction for vandalism.

We concur with the parties that the failure to determine minor's suitability for DEJ was error. We vacate the juvenile court's findings and dispositional order and remand for the court to properly consider minor for DEJ.

## PROCEDURAL SUMMARY

On April 15, 2021, the Tulare County District Attorney filed a juvenile wardship petition, pursuant to Welfare & Institutions Code section 602, subdivision (a),[1] alleging minor had committed misdemeanor vandalism causing over $400 in damage (Pen. Code, § 594, subd. (a); count 1).

On May 12, 2021, minor denied the allegation.

On May 25, 2022, a contested jurisdictional hearing was held. The juvenile court sustained the petition as charged and determined count 1 to be a felony.

On August 3, 2022, the juvenile court placed minor on 54 months of probation.

On August 4, 2022, minor filed a notice of appeal.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

## FACTUAL SUMMARY

On Monday, March 15, 2021, sometime between 6:00 a.m. and 6:30 a.m., the maintenance director of an elementary school discovered three broken windows at the school and called the sheriff's department.

Tulare County Sheriff's Deputy Alejandro Figueroa responded to the school at approximately 8:00 a.m. Figueroa and the maintenance director reviewed surveillance video with side-by-side views of footage from two of the school's security cameras recorded the previous day, March 14, 2021, between 6:00 p.m. and 8:00 p.m. The footage from the first camera showed a group of minors playing basketball and a "spark," occurring at "certain times," simultaneously with a window "shatter[ing]" on the second camera's footage. The maintenance director noticed "there was a bullet hole in between what caused the window to shatter." Based on his experience, Figueroa believed a BB or pellet gun was used to break the windows because a standard firearm would have caused them to shatter completely.

During the time the surveillance videos recorded the group of minors and the spark and breaking windows, no school activities were taking place and the school grounds were fenced in and locked. The maintenance director identified all the minors in the surveillance video as students from the school. He identified minor[2] in the surveillance footage as an individual "reaching for an object," "standing on the corner of the concrete" next to a tree, wearing black shorts and a gray shirt. He also identified minor's sister, C.C., standing next to minor. He provided the information about the students to Figueroa. Based on the maintenance director's identifications, Figueroa reviewed the minors' student files.

Figueroa then went to minor's residence approximately 30 to 45 minutes after he had arrived at the school, stating, "I believe I contacted his mother first, asked if [the

---

[2] Minor was 16 years old at the time of the incident.

3

minor] was home. I ended up contacting him out in the front yard and told him pretty much what I knew about the incident." Figueroa stated, "I told him what I knew … [that] it was just better just to be honest and [minor] said he had broken the window with a basketball," but "after that, [minor] later said that he [was] the one that shot it with a BB gun." Figueroa did not locate a BB gun during his investigation. Figueroa read minor his *Miranda* rights and let him speak to a public defender over the telephone. Minor advised Figueroa he did not want to provide any more statements.

After minor invoked his *Miranda* rights, Figueroa "recommended" to minor that he "should" write an apology letter to the school, but he "did not make him" write one, stating, "It was an option that [minor] was provided." Later that day, the elementary school's principal informed Figueroa that minor had given him an apology letter and provided Figueroa with a copy of the letter.

On cross-examination, Figueroa stated minor was the only student he contacted about the broken window. He stated minor first told him that the window was broken with a basketball and that after he told minor he knew the window had been broken with a BB gun, minor then told him the window was broken with a BB gun.

On redirect examination, Figueroa stated minor told him the window had been broken by a BB gun within "seconds or minutes" after minor first said it was broken by a basketball. He stated that he questioned minor first because he lived closest to the school, and before he contacted minor, he did not have reason to believe minor was the one who committed the offense because the surveillance video did not show who broke the window, "so [he] wasn't sure which juvenile may have done it, but he had told me he did it so—."

The invoice for replacing the main office window was $459.54. Eventually all of the school's windows were replaced.

*Defense Case*

### C.C.'s Testimony

C.C., minor's sister, was a student at the same elementary school as minor and was eight years old at the time of her testimony. She testified that she went to the school with minor to watch him play basketball and they entered the school through an unlocked gate and did not climb a fence. She said that after they finished playing basketball, she and minor walked towards his truck and heard a gunshot. She did not know where the sound came from and they continued walking towards minor's truck. C.C. did not see minor with a firearm that evening.

On cross-examination, C.C. stated that she did not hear the gunshot until she and minor had returned to his truck.

### Minor's Testimony

Minor testified that on March 15, 2021,[3] he drove to the school with a truck, despite not having a license, and played basketball with seven to nine other people while his sister, C.C., played on the playground. He stated they entered the school grounds through an unlocked gate and that he did not have a BB gun at any point that day. He testified he did not hear a gunshot while at the school but did hear "basically a shatter."

Minor stated that his mother woke him the following morning and told him a police officer was outside. He said he told the officers he broke the window, even though he had not broken it because "[i]t was—I mean the first answer that came to my head. I had barely woken up. I wasn't fully awake." He testified he did not know how the window broke. Defense counsel asked minor, "Is there anything about speaking to the officer that you remember that made you feel like you had to tell him it was you?" Minor answered, "[The officer] told me it wasn't a basketball." Defense counsel then asked

---

[3]     Defense counsel asked minor what he remembered doing on March 15, 2021. However, the incident occurred on the evening of March 14, 2021.

minor why he wrote an apology letter to the school. He stated, "Um, well, [the officer] told me that he was—he had told me you could—you write the letter and he was going to contact the school like about 15 minutes later, informed me that I had given the letter."

On cross-examination, the prosecution asked minor whether, when he was contacted by the officer "early" that morning, the "first thing that came to your mind was ['I did it']?" Minor answered, "Yeah." He stated he initially did not know that what the officer was talking to him about was a crime, stating, "Not too—honestly, no. I thought it was because of something else." He stated that he knew breaking windows or damaging school property was a crime, but still told the officer he broke the window, stating, "Yes. I did say that." He stated that he told the officer he broke the window with a basketball "because well I mean like I thought it was a basketball that broke it." He then stated, "I do recall saying I think it was [broken by] a BB gun." He stated, "I said well I thought it could have been a basketball. And then later on in the conversation[,] I did say I think it could have been a BB gun." The prosecutor asked him, "in between basketball and BB gun, were you asked multiple questions where you—" Minor answered that he didn't recall. The prosecutor then asked him, "So why did you tell the officer it was a BB gun?" Minor stated, "That was the next thing I guess. He said there was a little tiny like BB hole through it." Minor stated he knew that it was illegal to break things with a BB gun, but still said to the officer that he had done it.

On redirect examination, minor said he was not trying to protect any of his friends when he told the officer he had broken the window with a BB gun. Minor denied having a BB gun but stated his father owned one.

The court asked minor, "Can you explain to me why you told the officer that you broke the windows with a BB gun?" Minor answered, "I answered because that it was early in the morning and I had just woken up when he got there. And I was—I didn't even—I was laying down. I was still asleep and then my mom woke me up because she said there is an officer outside." He stated he "believed" Figueroa interviewed him on a

6

weekend morning, at approximately 8:45 a.m. or 9:00 a.m., which was "really early in the morning" for him on a weekend because he liked to sleep in, but that he normally went to school at 8:00 a.m. on weekdays.

The prosecutor clarified that Figueroa contacted minor at approximately 8:21 a.m. on Monday, March 15, 2021, not on a weekend.

## DISCUSSION[4]

Minor argues the juvenile court erred by failing to exercise its discretion to consider him for DEJ pursuant to section 790 and California Rules of Court, rule 5.800.[5] Minor claims he met the requirements for the DEJ program, but the prosecution failed to discharge its duties under the statutory scheme to conduct the eligibility determination. He requests we set aside the findings and dispositional orders, and remand the case to the court for further proceedings in compliance with section 790 et seq. The People concede that failure to consider minor for DEJ was error. We agree.

" 'The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791,

---

[4]    For organizational purposes, we first address minor's contention that the prosecution failed to consider his eligibility for DEJ.

[5]    All references to rules are to the California Rules of Court.

subd. (a)(3), 793, subd. (c).)' " (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1121–1122 (*Luis B.*).)

"To be admitted to the DEJ program, a minor must be eligible under section 790, subdivision (a)." (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 560.) As minor claims and the People acknowledge, he is eligible for consideration for DEJ under section 790, subdivision (a), which occurs "if all of the following apply: [¶] (1) The child is 14 years or older at the time of the hearing on the application for deferred entry of judgment; [¶] (2) The offense alleged is not listed in section 707(b); [¶] (3) The child has not been previously declared a ward of the court based on the commission of a felony offense; [¶] (4) The child has not been previously committed to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice; [¶] (5) If the child is presently or was previously a ward of the court, probation has not been revoked before completion; and [¶] (6) The child meets the eligibility standards stated in Penal Code section 1203.06" for probation. (Rule 5.800(a); see also *Martha C.*, at pp. 558–559.)

The provisions in rule 5.800(b)[6] for determination of eligibility under section 790 are quite clear. Rule 5.800(b) specifies: "Before filing a petition alleging a felony offense, or as soon as possible after filing, the prosecuting attorney must review the child's file to determine if the requirements of (a) are met. If the prosecuting attorney's review reveals that the requirements of (a) have been met, the prosecuting attorney *must* file Determination of Eligibility—Deferred Entry of Judgment—Juvenile (form JV-750) with the petition." (Rule 5.800(b), italics added; see §790, subd. (b).) Further, "If the minor is found eligible for deferred entry of judgment, the prosecuting attorney shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and their

---

**6**      Effective January 1, 2007, rule 1495 was renumbered rule 5.800.

attorney." (§ 790, subd. (b).)  In general, of course, the word " ' "shall" ' " connotes a mandatory standard.  (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 665.)  "If it is determined that the child is ineligible for deferred entry of judgment, the prosecuting attorney *must* complete and provide to the court, the child, and the child's attorney Determination of Eligibility—Deferred Entry of Judgment—Juvenile (form JV-750)." (Rule 5.800(e), italics added; *Luis B.*, *supra*, 142 Cal.App.4th at p. 1122.)

The juvenile court then has the ultimate discretion to rule on the suitability of the minor for DEJ after consideration of the factors specified in rule 5.800(d)(3) and section 791, subdivision (b), and based upon the "standard of whether the minor will derive benefit from 'education, treatment, and rehabilitation' rather than a more restrictive commitment."  (Rule 5.800(b); *Luis B.*, *supra*, 142 Cal.App.4th at p. 1123.) The court may grant DEJ to the minor summarily under appropriate circumstances (rule 5.800(d)), and if not, must conduct a hearing at which "the court *must* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties."  (Rule 5.800(f), italics added; *Luis B.*, at p. 1123.)  While the court retains discretion to deny DEJ to an eligible minor, the duty of the prosecuting attorney to assess the eligibility of the minor for DEJ and furnish notice with the petition is mandatory, as is the duty of the court to either summarily grant DEJ or examine the record, conduct a hearing, and make "the final determination regarding education, treatment, and rehabilitation …."  (§ 791, subd. (b); see also § 790, subd. (b); rule 5.800(b), (d) & (f); *Martha C. v. Superior Court*, *supra*, 108 Cal.App.4th at p. 559; *Luis B.*, at p. 1123.)  Use of the mandatory language "must" indicates a legislative intent to impose a mandatory duty; no discretion is granted.  "The court is not required to ultimately grant DEJ, but is required to at least follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made." (*Luis B.*, at p. 1123.)

9

Here, the parties agree the prosecution did not satisfy the statutory requirements to determine minor's eligibility and provide notice, and the juvenile court failed to conduct the necessary inquiry and exercise discretion to determine whether minor will derive benefit from education, treatment, and rehabilitation rather than a more restrictive commitment. Therefore, error was committed.

The parties disagree, however, as to the required disposition. Minor contends that the error requires us to set aside the findings and dispositional orders, and remand the case to the juvenile court for further proceedings in compliance with section 790 et seq. He argues that if as a result of those proceedings, the court grants DEJ, it should issue an order vacating the findings and orders, and that if denied, minor should have the right to have the denial of DEJ and the findings and orders reviewed on appeal. The People argue that the court's order should be conditionally vacated and the matter remanded for further proceedings consistent with section 790 et seq., including a determination of whether minor is suitable for DEJ, and if the court finds minor unsuitable for DEJ, the sustained allegation of the petition (vandalism, Pen. Code § 594, subd. (a)) should be reinstated because the validity of the contested jurisdictional hearing itself is not in dispute.

We agree with minor. As stated in *Luis B.*, the error requires we set aside the findings and dispositional orders and remand the case to the juvenile court for further proceedings in compliance with section 790 et seq. and rule 5.800. If, as a result of those proceedings, the court grants DEJ to minor, it shall issue an order vacating the findings and orders. If the court denies DEJ to defendant, it shall make its order continuing in effect the judgment, subject to minor's right to have the denial of DEJ and the findings and orders reviewed on appeal. (*Luis B.*, *supra*, 142 Cal.App.4th at p. 1123–1124; see *People v. Dyas* (1979) 100 Cal.App.3d 464, 470.) This result makes it unnecessary for us to address the other contentions minor raises on appeal. (*Luis B.*, at p. 1124; *In re C.W.* (2012) 208 Cal.App.4th 654, 662–663.)

## DISPOSITION

We set aside the juvenile court's findings and dispositional order. The matter is remanded for further proceedings in compliance with section 790 et seq. and rule 5.800. If, as a result of those proceedings, the minor elects DEJ, the court shall exercise its discretion regarding whether or not to grant the minor DEJ. If, as a result of those proceedings, the court grants DEJ to minor, it shall issue an order vacating the findings and orders. If the court denies DEJ to defendant, it shall make its order continuing in effect the judgment, subject to defendant's right to have the denial of DEJ and the findings and orders reviewed on appeal.